## BOLTON et al. v. MURPHY et al.

No. 2378.    Decided August 17, 1912.    Rehearing Denied November 4, 1912 (127 Pac. 335).

1. EASEMENT—PRESCRIPTION—RIGHT OF WAY. In order to acquire a private easement in the nature of a right of way over the lands of another, the claimant must have used the same openly, continuously, and adversely for twenty years, during all of which time the title to the land over which the easement is claimed must have been out of the United States.[1] (Page 594.)

2. EASEMENTS—PRESCRIPTION—CONTINUITY OF USE—RIGHT OF WAY —EVIDENCE. In an action to quiet the right to an easement in the nature of a right of way, defendants may not prove, in order to show that plaintiff, claiming by prescription had not confined himself to a definite route, that other persons had gone over the land in different directions, and that the place where they traveled was for the time being the way

[1] Lund v. Wilcox, 34 Utah, 205, 97 Pac. 33.

for such persons, and for the claimant of the right of way, because the acts of strangers could not defeat or qualify his right. (Page 599.)

3. EASEMENTS—PRESCRIPTION—RIGHT OF WAY—CONTINUITY OF USE. A slight deflection in a right of way on account of the building of a railroad embankment by the owner of the servient estate and at his request cannot be considered, in an action to quiet a right to a prescriptive easement, as having broken the continuity of the use. (Page 600.)

4. EASEMENTS—CHANGE OF RIGHT OF WAY. A change in a right of way already acquired by prescription at the express request of and for the benefit of the then owner of the land with the consent of those having the right of way does not affect the right to the old way if the new way is closed by a subsequent owner.[2] (Page 600.)

5. EASEMENTS—ADJOINING LANDOWNERS—RIGHT OF WAY. The mere fact that bars were maintained across a prescriptive right of way on another person's land, not a party to the action, over which the way ran, does not affect plaintiff's easement over defendant's land, nor give defendant the right to put up bars. (Page 601.)

6. EASEMENTS—PRESCRIPTION—RIGHT OF WAY—NATURE OF USE. In an action to quiet the right to an easement, in the nature of a right of way, evidence *held* to show that the way was used continuously, in spite of slight changes in the treveled way, from 1875 to 1895, under a claim of right for the purposes that farm roads are ordinarily used by farmers, and hence the court erred in limiting such use.[3] (Page 602.)

7. EASEMENTS—RIGHT OF WAY—ACCESS OF OTHER ROADS. The fact that one claiming a right of way by prescription has access to another road which he, in fact, has to cross to use the right of way in question, does not affect his right to such prescriptive way. (Page 602.)

8. EASEMENTS—PRESCRIPTION—USE OF RIGHT OF WAY. . Parties claiming a right of way by prescription are entitled to the use they made of it for the twenty years immediately preceding an attempted interruption of the use, and are not limited by any use they made of it before that time. (Page 603.)

9. EASEMENTS—RIGHT OF WAY—OBSTRUCTIONS. The owner of a servient estate cannot put a gate across a right of way acquired by prescription without the consent of those having the right of the easement, at least not without showing that it is necessary for the preservation and proper and efficient use of their lands. (Page 603.)

---

[2] Thompson v. Madsen, 29 Utah, 326, 81 Pac. 160.
[3] Lund v. Wilcox, 34 Utah, 205, 97 Pac. 33.

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Charles G. Bolton and others against James P. Murphy and another.

From the decree, plaintiffs appeal and defendants assign cross-errors.

REVERSED IN PART AND REMANDED WITH DIRECTIONS.

*Stewart, Stewart & Alexander* for appellants.

*King, Nibley & Russell* for respondents.

FRICK, C. J.

On the 10th day of October, 1910, appellants commenced this action in the district court of Salt Lake County to quiet the right to the use of an easement in the nature of a right of way which they alleged they had acquired by prescription or user over the lands of respondents, and to enjoin them from obstructing the same or from interfering with appellants in using said right of way. The court issued an order restraining respondents from interfering with appellants in the use of said easement pending this action. Respondents in due time filed their answer to the complaint, in which they admitted that they owned the land in question, but denied the existence of the easement or right of way, and affirmatively alleged that appellants without right had trespassed upon the lands aforesaid. The case was tried to the court without a jury, and on the 16th day of December, 1911, the court filed its findings of fact and conclusions of law, and entered a decree partly in favor of appellants and partly in favor of respondents. The appellants appeal from that portion of the decree in which they were denied all they prayed for, and the respondents assign cross-errors in which they assert that the court erred in granting appellants any relief. The findings of fact are unusually long, covering

41 Utah—38

about sixteen pages of the printed abstract, and, although some portions thereof are assailed by both parties, we cannot devote the time which would be necessary to specifically state the objections thereto. Neither is such a course necessary in order to arrive at a correct solution of the questions involved in this case. Appellants' counsel contend that, under the evidence, the court should have found that their clients have acquired and are entitled to a right of way over respondents' land over the course specifically described in the complaint and proved at the trial for all the purposes for which farmers usually use ordinary farm roads, and that respondents have wrongfully interfered and are threatening to continue so to interfere with appellants in the use and enjoyment on said right of way. Upon the other hand, the claim of respondents' counsel, as we understand it, is that appellants have acquired no right of way whatever over the land in question, and that in using the same they are trespassers. The court did not agree with either side, but awarded all of the appellants, except John H. Osguthorp, a limited right of way "for travel upon foot and with light unloaded vehicles" only. This right was further restricted to certain dwelling houses as they existed prior to the year 1890, and also gave the respondents a right to maintain certain bars or gates across said right of way at certain places.

Appellants, in effect, contend that the limitations and restrictions imposed by the court are not only contrary to the great weight of the evidence but are wholly unsupported by any evidence. The questions to be determined, under the issues, are very narrow, and are: (1) Have appellants acquired an easement in the nature of a right of way over the lands of respondents by prescription or user? (2) If so, what is the nature and extent of that right?

In order to acquire a private easement in the nature of a right of way over the lands of another, the claimant, under the laws of this state, must have used the same openly, continuously, and adversely for a period of twenty years, during all of which time the title to the land over which the easement is claimed must have been out of

the United States. (*Lund v. Wilcox,* 34 Utah, 205, 97 Pac. 33, and cases there cited.) The record in this case discloses that the right of way in question is about one-quarter of a mile in length extending across respondents' land which lies westerly and northwesterly from the lands of appellants. It further appears that all the lands in question are farm lands, and that a public highway runs north and south along the west end of respondents' land, and that appellants in passing to and from their farms to said highway pass over the right of way in question. The evidence relating to the time and manner of the use of the road in question in substance is as follows:

Ephraim Williams testified that he was acquainted with respondents' land ever since 1860; that a well-defined wagon road existed and had been used and traveled over said land since 1860; that he saw the appellants use and travel said road, and never saw any obstructions placed thereon, except within the last year or so.

Mrs. Rebecca Cook testified that her husband at one time owned the land now owned by respondents, and that during the year 1881 she lived with him thereon; that at that time the wagon road over said land was being used by the appellant Bolton in passing to and from his home to the main road running along the west end of respondents' premises.

Joseph Leggett testified that from 1891 to 1901 he lived on and farmed the land adjoining respondents' land on the east; that during said ten years the appellants Bolton, Cowley, and Mr. Osguthorp used the road in question with teams and wagons, sometimes daily and other times once or twice a week; that the condition of the road was such that said parties could haul good loads over it; that no one obstructed the same over respondents' land during any of the time aforesaid, nor questioned the right of appellants to pass over it at any time.

Marshall Helm testified that he had lived near respondents' land for twenty-seven years prior to the trial; that he saw the road in question traveled since 1884, and saw the appellants use and travel the same since said year; that he

never knew of any obstructions being placed on the road until recently, when respondent Murphy placed a bar across it at the west end of his land.

Nicholas Bengeter, another witness, testified that between the years 1883 and 1889 he lived on land lying between the land of appellant Bolton and respondents' land, the same being immediately east of and adjoining respondents' land; that the road in question during that time was traveled by Bolton, Cowley, and the Osguthorps sometimes once or twice a week and sometimes daily. This witness also said that it was during that time that at the request of the owner of the land, and on account of the construction of a railroad grade, the travel was somewhat changed, so as to make the road more convenient for all, and that the owner of the land paid for making the change which consisted in making a dugout or leveling the road along the side of the hill where it was being used. This witness' father then owned respondents' land, and sold the same to the purchaser thereof, and informed such purchaser of the right of way, and the purchaser agreed to and did permit appellants to travel over the same just as they had done prior thereto.

John Clows, another witness, testified that he in 1901 had purchased land adjoining respondents' on the east; that the road in question was then and continued to be traveled up to the time of trial; that appellant Bolton and the witness used it, worked upon it, and improved it.

Leonard Haag testified that he became the owner of respondents' land in 1903, and afterwards, in 1907, sold the same to him (respondent Murphy) and informed him of the existing right of way at the time of purchase.

Thomas Jackson, another witness, said that he lived near the road in question, and had traveled over it and seen it used by appellants Bolton and Cowley since 1868; that the road was a good wagon road.

Henry E. Parry testified that he moved onto respondents' land in 1894 and lived thereon three years; that he then intended to purchase the same, and was informed of the existing right of way over it. With regard to its use, as appears

from the bill of exceptions, this witness said: "It was used for all ordinary purposes for the convenience of those who had occasion to go up that way in that neighborhood or come down, and also people who go through there to buy fruit." He further testified that during all that time the appellants Bolton, Cowley, and Osguthorp used the road in passing to and from their farms.

Priscilla Bolton, one of the appellants, testified that she had lived with her husband on his land for thirty-seven years last past; that during all of that time her husband had used and traveled over the road in question; that during that time he had hauled lumber, brick, coal, and other material to the farm and had hauled everything they produced and desired to dispose of from the farm with his teams and farm wagons. This witness said that she during a large portion of that time had lived and now lives in a separate house on Bolton's land.

The appellant John H. Osguthorp testified that he had lived on his place lying easterly from respondents for over thirty years; that he and his family had used the road in question for thirty-seven years, sometimes as often as several times a day, and then again not for a month or so; that the road was a good road, and that during the time aforesaid he hauled wagon loads of hay and coal and other material he needed from year to year; that he always passed over the road as a matter of right, and no one ever questioned his right to do so until respondents did so in August, 1910; that the road was always used by Mr. Bolton for ordinary travel with his teams and wagons and other lighter vehicles, loaded and unloaded.

Charles G. Bolton, appellant, testified that he had traveled over and used the road in question for thirty-seven years; that during all of that time he had each year hauled loads with his teams and wagons over the same; that it was a good road, and was continuously traveled during that time by himself and the appellants Cowley and Osguthorp.

William S. Cowley, another of the appellants, testified that he had lived on his land ever since 1871, and that he

knew the road in question during all of that time and had
traveled and used it during all of said time for all pur-
poses with loaded wagons and teams going both ways; that he
had hauled his coal and provisions over it to his farm, and
had hauled his produce from the farm over it; that the
Boltons and Osguthorps had used it during that time in the
same manner; that no one had ever questioned his right to
travel the road, except the respondents, who had done so
recently.

John G. Bolton, a son of the appellant Charles Bolton,
testified that he was thirty-five years of age; that during all
of that time he had lived with his father on his father's land
east of respondents; that he had traveled up and down the
said road all his life since his boyhood; that he had hauled
brick and other material over the road with his father's
teams and wagons; that no one had ever obstructed the road
prior to the time respondents attempted to do so.

Alfred Cowley, a son of appellant Cowley, testified that
he was thirty-four years of age; that he had by himself and
with his father hauled loads over the road in question all his
life; that they had used it all the way from several times
a day to once or twice a week.

Another witness testified that the road had been used to
his knowledge for twenty years for ordinary purposes.

Appellants' evidence with respect to the length of time
that the road in question was used is not denied, not even
questioned. The only question that is raised is the charac-
ter or nature of the use, and this is done only by witnesses
who during the last eight or ten years have known the road
in question, and they say that during that time they did not
see appellants use the road to the extent that they and their
witnesses claimed they did. The most that can be said is
that respondents' counsel at the trial made a most vigorous
attempt to present a defense, but, as we view the evidence,
they have utterly failed in this attempt, as we shall here-
after attempt to show.

Referring now to the evidence on the part of respondents,
the respondent James P. Murphy testified that he was told

when he purchased the land in question that only one of the appellants had a right of way over the land, and that the witness was informed that said appellant had such a right because he had purchased the easterly portion of the land which at one time was a part of the farm now owned by respondents.

There is a great deal of evidence in the record which is not material. For example, there was much time devoted to the question of whether or not there were any others who in early days had traveled the road in question, and whether or not such others and the people generally in that vicinity had not passed over the land now owned by respondents and other lands in different directions and places. There was also much evidence elicited with regard to certain changes that it was claimed had been made in the traveled course of the road in question, and that bars or gates had been put up or maintained at places along the road east of respondents' land. The evidence with regard to the departure from the traveled track by some persons other than appellants was no doubt introduced for the purpose of showing that the continuity of the use at particular places along the road had been broken. Evidence showing that the roadway was changed from time to time, and that there was a place where the road was not used for the period of time required in this state to acquire a private easement by prescription would have been material and proper, but the character of the most of the evidence that was introduced upon that subject in this case was entirely immaterial under the law. Mr. Jones in his work on Easements states the rule upon the subject now under consideration in the following words:

"To show that one claiming a right of way by prescription had not confined himself to a definite route, it is not competent to prove that other persons had gone over the land in different directions, and that the place where they traveled was for the time being the way for such persons, and for the claimant of the right of way. The acts of strangers could not defeat or qualify his right."

All the evidence, therefore, which falls within the foregoing rule, cannot be considered in arriving at what the result in this case should be. There was, however, some competent evidence introduced showing that at one time there was a slight deflection made in the traveled track.

This was in the early eighties, along about 1883, when one J. W. Young was the owner of the lands, and the deflection in question was made at his request in order to avoid a railroad grade which it seems he was constructing in front of the premises in question. The deflection was, however, slight and under the circumstances under which it was made cannot be considered as having in any way broken the continuity of the use.

Another slight change in the traveled track was made about the year 1903. If it were conceded, however, that the latter change was such as under ordinary circumstances would be sufficient to break the continuity of travel or use, such is not the case here, for the reason that the latter change was in fact made at a time when the right to an easement by prescription was complete. Under the undisputed evidence, this change comes clearly within the rule laid down by this court in *Thompson v. Madsen,* 29 Utah, where, at page 332, 81 Pac. 161, Mr. Justice Straup, speaking for the court, said:

"If, then, the predecessors of the defendants, in consideration of the closing of said portion of the north and south alley, granted to plaintiffs and to their predecessors a right of way over the east and west alley in lieu thereof, which was accepted by the plaintiffs and their predecessors, the defendants will not now be allowed to close the new or substituted alley without first restoring the old one; and the fact that such grant was oral matters not, if on the faith of it rights have been acquired or relinquished and acted upon."

The evidence in the case at bar is undisputed that the foregoing change was made at the express request of and for the benefit of the then owner of the land who was respondents' predecessor, and to all of which appellants expressly consented. This change, therefore, could not affect appellants' rights with respect to the right of way in question.

The next contention that bars were put up and maintained to the east of respondents' land was entirely irrelevant under the issues. Whether bars were or were not maintained by others over whose land the road in question passed after leaving respondents' land is of no consequence. It may be that appellants are satisfied with such bars. It may also be that they have acquired only a qualified right along such land which right is subject to the right of maintaining such bars by the owners of the land. The owners of such lands were not parties to this action, and hence could not be bound by any possible conclusion at which the court might have arrived with regard to the right of maintaining bars or gates across the road in question. The only evidence that had any relevancy was whether respondents had a right to put up and maintain bars across the road at any point where the same passes over their land. Under the issues and the evidence respondents have no right to put up or maintain bars or gates across the road in question, unless appellants' right to the use of the road was not complete when respondents attempted to obstruct the same as aforesaid. While there is no evidence in the record showing when the patent was issued by the United States, in whom the original title was vested to respondents' land, yet their counsel in their brief, in referring to this subject, at page 13, say: "The Murphy (respondents') land was patented in 1874." We assume this to be the fact. If, therefore, the title passed from the government of the United States to that of private ownership in the year 1874, the right to acquire a private easement by user or prescription dates from that year. It will be seen from the evidence to which we have referred that long before 1874 appellants used the road in question over the land now owned by respondents and which prior to their ownership was owned by one of their predecessors.

If, therefore, we begin with the year 1875, the twenty-year period would end with the beginning of the year 1895. Barring the immaterial changes in the traveled track of the road in question, to which reference has been made, the evi-

dence is conclusive that during the period commencing with the former and ending with the latter year the road in question was used continuously by appellants under **6** claim of right for the purposes that farm roads are ordinarily used by farmers. There is absolutely no question about the use and its continuity, except the slight changes to which references has been made. This court in *Lund v. Wilcox, supra,* recognized the doctrine that a departure from the traveled track at any time before the prescriptive right is complete arrests the running of the time in favor of the user or claimant. The facts and circumstances relating to the slight changes in this case do, however, not bring it within the doctrine laid down in the Lund Case, *supra,* and it would be a travesty of justice to so hold. The court, however, limited appellants' use of the road in question. In doing so the court clearly went contrary to the evidence. If anything is established in this case beyond a question of a doubt, it is that the use of the road in question was that use which the farmers in that vicinity made of similar roads in passing over them with their teams, wagons, and lighter farm vehicles and farm machinery when necessary. In other words, that the road in question was used for the purposes that roads by farmers in country districts are ordinarily used. The court therefore clearly erred in limiting the use as it did in the judgment and decree.

Neither can we see why the appellant John H. Osguthorp, was excluded from the use of the road. This apparently was done for the sole reason that his land lies beyond another road running north and south, which, respond- **7** ents contended at the trial, he always could have and sometimes did use in going to Salt Lake City. Whether Mr. Osguthorp had one or many other roads he could travel was entirely immaterial under the issues. The only questions were whether he had acquired an easement in the nature of a right of way over the land now owned by respondents by prescription and to what extent he could use the same. As we have said, the evidence upon those questions leaves no room for doubt. The court therefore erred in ex-

cluding him from using the road for the ordinary purposes for which farmers in that vicinity use roads or highways.

Neither can we understand why the court limited the use to certain houses as they existed in 1890. The appellants, if they have a right to use the road at all, have the right to continue such use as they made thereof for the twenty years immediately preceding the attempted interruption of the use thereof by respondents. Appellants are not limited to the use they made of it the first ten or twenty years, but they are limited to the use they made of same the last twenty years; that is, the twenty years immediately preceding the time of the objection to the use thereof by respondents. The nature or character of the use of an easement may be changed, provided the change continues long enough to give a prescriptive right. Whatever period of time may be taken since 1874, when the title to respondents' land passed from the United States, the evidence is that the use was the usual and ordinary use that farmers usually make of country roads or highways. The use, therefore, should have been limited to such a use, and not restricted as was done.

Appellants also insist that the court erred in permitting respondents to maintain a bar or gate at or near the point where the road in question departs from the highway and enters onto their land, and at other points along the road east thereof. The evidence is again conclusive that, if appellants have any right to pass onto respondents' land from the highway, they have such right without any interference whatever. Nor can we see why respondents desire to place a bar or gate at that point, or at any point along the road as it passes over their land, since they have no fence along the west end thereof along the highway at all. But, even if they had put up such a fence, they cannot, at this late date, be permitted, without the consent of appellants, to put up bars or gates, at least not without showing that such obstructions are necessary for the preservation and proper and efficient use of their lands, which is the servient estate.

In conclusion we desire to state that on reading over the entire evidence that is preserved and certified to by the court in the bill of exceptions we have been unable to discover any real conflict upon any material question, and hence we cannot escape the duty of determining what, under the evidence, the result should be. What we have already said also sufficiently disposes of the respondents' assignments of error.

The findings of fact, conclusions of law and judgment, so far as they are in conflict with the views herein set forth, are hereby vacated, set aside, and reversed. The cause is remanded to the district court of Salt Lake County, with directions to modify the findings of fact, and to make findings of fact and conclusions of law in favor of appellants in accordance with the views herein expressed, to enter judgment in favor of all the appellants, and to quiet the right in them to the use of that portion of the road in question described in the complaint, and to enjoin respondents from interfering with appellants in the use of such road when used for the purposes that roads are ordinarily used for by farmers in the vicinity in passing over the same with their teams, wagons, and other farm vehicles, loaded and unloaded, and farm machinery when necessary. The district court is also directed to include in such judgment the injunction that appellants shall not injure or interfere with respondents' irrigation ditch running along the side of the road in question, and, in case the same is injured in any way by appellants in passing along and over said road, they shall forthwith repair and restore the same so as to leave the same in good condition for use. Appellants to recover costs on appeal.

McCARTY and STRAUP, JJ., concur.