**F. C. AYRES MERCANTILE CO. v. UNION PAC. R. CO. et al.**

(Circuit Court of Appeals, Eighth Circuit, November 22, 1926.)

No. 7274.

1. Eminent domain ⬯268—Ejectment to recover possession of land, occupied by spur track, is action at law.

Ejectment to recover possession of strip across plaintiff's property, occupied by spur track, is action at law.

2. Trial ⬯4—Equitable issues raised by cross-complaints in law action should be disposed of first (Judicial Code, § 274b [Comp. St. § 1251b]).

Where defendants in action at law filed cross-complaints, seeking equitable relief, under Judicial Code, § 274b (Comp. St. § 1251b), equitable issues should be disposed of first.

3. Appeal and error ⬯1030—Erroneous trial procedure, treating law action as equitable, if not prejudicial, is no ground for reversal.

Procedure, within rules of law, rests somewhat in trial court's discretion, and erroneous procedure in treating law action as one in equity, if not prejudicial, is no ground for reversal.

4. Jury ⬯34(3)—Direction of verdict because of absence of fact issue is not invasion of right to jury trial (Const. Amend. 7).

Guaranty of Const. Amend. 7, as to right of jury trial, applies only where there are issues of fact and, if direction of verdict for defendant properly disposed of legal proposition, plaintiff cannot complain.

5. Ejectment ⬯9(3)—Plaintiff in ejectment must prevail on strength of its own title.

In ejectment, plaintiff must prevail on strength of its own title.

6. Eminent domain ⬯295—Burden of establishing defense of public use of spur tracks is on defendant in ejectment.

In ejectment to recover property occupied by spur track, burden of establishing defense that use of tracks was public use is on defendant.

7. Railroads ⬯63—Purchaser takes property subject to railroad's right to maintain tracks.

Purchaser takes property subject to whatever rights railroad has to maintain tracks thereon, tracks being notice to purchaser of right by which they are maintained.

8. Eminent domain ⬯300—Evidence held to show that spur tracks, crossing plaintiff's property and serving others, were devoted to public use for over 30 years.

In ejectment, evidence held to show that spur tracks, crossing plaintiff's property and serving various industries, had been devoted to public use for over 30 years.

9. Eminent domain ⬯268—Use of spur tracks, serving large number of industries, is "public use."

Use of spur tracks, crossing private property to serve large number of industries, is a "public use" as respects owner's right to maintain ejectment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Use (in Eminent Domain).

10. Eminent domain ⬯20(5)—Railroad can condemn land occupied by its spur tracks devoted to public use.

Under Colorado statutes railroad can acquire by condemnation land occupied by its spur tracks devoted to public use.

11. Eminent domain ⬯268—Ejectment to recover strip occupied by spur tracks must fail, if tracks were devoted to public use when suit was brought.

Ejectment to recover strip occupied by spur tracks crossing plaintiff's property must fail, if tracks were devoted to public use when suit was brought, though tracks were not immediately devoted to such use when constructed.

12. Easements ⬯5—Easement may be acquired by prescription.

Right of easement may be acquired by prescription.

**13. Easements ☞5—Elements of prescriptive user are open, visible, and continuous use under claim of right, adverse to and and with knowledge of owner; "prescription."**

Elements necessary to acquire easement by "prescription" are open, visible, and continuous use under claim of right, adverse to and with knowledge of owner.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Prescription (in Law).]

**14. Adverse possession ☞40—Courts incline to consider prescriptive periods as analogous to time prescribed by local limitation statutes.**

Though title by prescription does not rest on statutes of limitation, courts incline to consider prescriptive periods as analogous to state statutes limiting time to sue to recover real property.

**15. Railroads ☞63—Moving of spur tracks held not to interrupt running of prescriptive period nor impair rights.**

Moving of spur tracks crossing plaintiff's property at plaintiff's request, without interrupting continuity of use of tracks, did not interrupt running of prescriptive period nor impair rights already accrued.

**16. Easements ☞36(1)—Adverse user is presumed after expiration of prescriptive period.**

There is presumption of adverse user after prescriptive period has expired.

**17. Easements ☞8(2, 3), 36(1)—Knowledge that permissive use has become adverse must be brought home to owner, and burden of proving change is on one asserting it.**

Knowledge that permissive use has become adverse must be brought home to owner of property, and burden of proving such change in use is on one asserting it.

**18. Railroads ☞63—Maintenance of gates across spur track before adverse use began held not to prevent acquisition of easement by prescription.**

Where spur track had been used without interference, openly, continuously, and under claim of right adverse to owner of legal title for over 30 years, which was longer than local limitation period, mere fact that for 3 years prior thereto owners maintained gates over tracks did not prevent acquisition of easement by prescription.

**19. Railroads ☞63—Evidence held to establish railroad's easement by prescription.**

In ejectment to recover possession of strip occupied by spur track, evidence *held* to show continuous use of track by railroad, sufficient to give it easement by prescription.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Action by the F. C. Ayres Mercantile Company against the Union Pacific Railroad Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

James Grafton Rogers, of Denver, Colo. (William V. Hodges, D. Edgar Wilson, and James L. Goree, all of Denver, Colo., on the brief), for plaintiff in error.

C. C. Dorsey, of Denver, Colo. (Edward G. Knowles, of Denver, Colo., on the brief), for defendant in error Union Pac. R. Co.

Frank E. Gove, of Denver, Colo. (Kenaz Huffman, of Denver, Colo., on the brief), for defendant in error Armour & Co.

Lawrence Lewis, of Denver, Colo. (Donald C. McCreery, of Greeley, Colo., and Bryan G. Johnson, of Denver, Colo., on the brief), for defendants in error Jamison and others.

Before KENYON, Circuit Judge, and SCOTT and SANBORN, District Judges.

KENYON, Circuit Judge. This suit is one in ejectment brought originally by plaintiff in error (hereinafter designated as plaintiff) against the Union Pacific Railroad Company, one of the defendants in error, to recover possession of a certain strip of land across a part of the northwesterly one-half of lots 1 to 6, inclusive, block 23, East Denver, Colo., occupied by two spur tracks of said railroad company serving certain industries in said block 23 and other adjacent blocks. Upon motion of defendants, plaintiff was required by the court to make parties Armour & Co. and the other defendants in error (hereinafter referred to as the Arbuckle heirs), on the theory that they had some right in the property. All defendants in error here will be designated as defendants. The defendants answering plaintiff's complaint asserted that the Union Pacific Railroad Company had the right to maintain its tracks upon plaintiff's property; that the action is barred by the statute of limitations; that an easement by prescription exists as to all defendants to have the use of the strip of land occupied by the railroad tracks. All defendants claim certain estoppels.

Defendant Union Pacific Railroad Company asserts that the tracks on the strip of land in question had been, and were at the time the action was brought, used for public purposes. The trial court instructed a verdict for all of the defendants, and plaintiff brings the case here.

[1] Defendants filed cross-petitions raising equitable issues. Plaintiff continued to assert throughout the trial that the case was one at law. Whether or not defendants so considered it up to the time of filing motion to instruct the jury to return a verdict in their favor is not clear from the record, but in any event they treated it as a case at law at the time of filing such motions. The action as originally brought was one based on plaintiff's title to recover possession of specific real

property. It was clearly an action at law. Whitehead v. Shattuck, 138 U. S. 146, 11 S. Ct. 276, 34 L. Ed. 873; Denison v. Keck et al. (C. C. A.) 13 F.(2d) 384.

[2] Defendants had the right under section 274b of the Judicial Code (Comp. St. § 1251b), to file cross-complaints seeking equitable relief against the plaintiff. In this situation the equitable issues should have been first disposed of. The Supreme Court of the United States has pointed out the proper procedure in Liberty Oil Company v. Condon National Bank et al., 260 U. S. 235, 242, 43 S. Ct. 118, 121 (67 L. Ed. 232), saying: "Where an equitable defense is interposed to a suit at law, the equitable issue raised should first be disposed of as in a court of equity, and then, if an issue at law remains, it is triable to a jury." See, also, Union Pac. R. Co. v. Syas, 246 F. 561, 158 C. C. A. 531; Houston v. Trower (C. C. A.) 297 F. 558; Horbach v. Coyle et al. (C. C. A.) 2 F.(2d) 702, 707.

[3] It appears from the record that, because the jury was about to be discharged for the term, it would expedite business to have the legal questions first determined. Defendants waived the right to have the equitable issues first disposed of. Plaintiff does not seem to have objected to this procedure, and a jury was impaneled. During the trial the court submitted one question of fact to the jury evidently for an advisory opinion. After that the court filed an opinion holding for defendants, and indicating there was no further need for a jury and stated it was the court's impression that it "should make specific findings of fact and conclusions of law agreeable to the views herein expressed and enter a decree thereon." Apparently at this time the court regarded the case as in equity. After the court had indicated its views, defendants moved for an instructed verdict, and subsequently the jury, which had been excused for a while, was recalled, and the court directed a verdict for defendants. After this defendants dismissed their equitable cross-petitions and counterclaims.

[4] It is evident the procedure was irregular, and resulted in a legal farrago. Procedure within the rules of law must rest somewhat in the discretion of a trial judge, and if the procedure here, while not meeting with our approval, did in fact work no prejudice to plaintiff, it is not ground for reversal. The court came to the conclusion that the evidence was not sufficient to warrant submitting the questions of fact to a jury for determination, and upon motion of defendants directed a verdict for all defendants. The guaranty of the Seventh Amendment to the Constitution as to the right of a trial by jury applies to cases in which there are issues of fact to be determined. The court's decision was based on a legal proposition, and, if such action was correct, plaintiff has no ground for complaint. Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919; Miller v. United States, 11 Wall. 268, 20 L. Ed. 135. We turn, therefore, to the question of whether the court erred in instructing a verdict for defendants.

[5] The court indicated that it instructed the verdict on the ground that the use of the tracks by the Union Pacific Railroad Company was a public use. The court expressly said it did not find that defendants, Armour & Co. and the Arbuckle heirs, were entitled to a judgment establishing their claimed easements, stating: "All a directed verdict means is that the plaintiff has no cause of action on the peculiar facts set up in the complaint." It was evident, therefore, that the court instructed a verdict for all of the defendants on the theory that the use of the tracks by the Union Pacific Railroad Company was a public use, and that therefore ejectment would not lie. If the verdict was properly directed, no matter on what ground, plaintiff has no reason for complaint. In any discussion of this case, it must be kept in mind that this is an action in ejectment, and plaintiff must prevail on the strength of its own title. 19 C. J. 1039.

[6] *Public Use.*—Was there such public use shown by this record of the tracks of defendant Union Pacific Railroad Company upon plaintiff's property as to bar plaintiff's action for ejectment? Of course, the burden of establishing that defense was upon defendant. The evidence shows that the easterly track, designated as the Armour track, has been used as a track for the switching of cars to Armour & Co., and what might be termed the branch track has been used in connection with what is known as the Colorado Warehouse. Both tracks were used as a part of one trackage system. If there was public use of the easterly track, there was also such use of the westerly track as a part of said system. At the time this action was brought these tracks had been used without interruption for some 38 years. After 1890 they were used, in addition to serving the industries in block 23, as a means of access to a system of industrial trackage to the north, known as the Coon Hill tracks. There seems to have been no arrangement made in regard to this—no objection or remonstrance from any of the owners of the land in the westerly one-half of block 23, and such use has continued for a period of 30 years prior to the commence-

ment of this suit. This use was made of these tracks for 19 years before plaintiff acquired title. The evidence shows without dispute that it was a constant, daily use.

[7] In 1892 the rear one-half of lots 1 to 6 was released from a trust deed and conveyed to Simeon B. Armour, through whom the title finally became vested in defendant, Armour & Co. The Arbuckle heirs acquired their interests in 1897. The trust deed covering the front one-half of lots 1 to 6 was foreclosed, and the property conveyed in 1909 to plaintiff. These tracks were then upon the property, and plaintiff must have known they were being used as a part of the switching system to give access to the industries reached by the Coon Hill trackage. None of the owners of the property ever objected to this additional use of the tracks. Plaintiff took the property subject to whatever rights the railroad had to maintain the tracks upon the land purchased. The tracks were notice to it of the right by which they were maintained. Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 S. Ct. 239, 35 L. Ed. 1063; Roberts v. Northern Pacific Railroad Co., 158 U. S. 1, 15 S. Ct. 756, 39 L. Ed. 873; Kindred v. Union Pacific Railroad Co., 225 U. S. 582, 32 S. Ct. 780, 56 L. Ed. 1216; Henderson v. Wanamaker, 79 F. 736, 25 C. C. A. 181.

[8] That these tracks were devoted to a public use, at least after 1890, is fully established by the evidence. Hairston v. Danville & Western Railway Co., 208 U. S. 598, 28 S. Ct. 331, 52 L. Ed. 637, 13 Ann. Cas. 1008; Union Lime Co. v. Chicago & Northwestern Ry. Co., 233 U. S. 211, 34 S. Ct. 522, 58 L. Ed. 924; Chicago & N. W. Ry. Co. v. Ochs, 249 U. S. 416, 39 S. Ct. 343, 63 L. Ed. 679; Milheim et al. v. Moffat Tunnel Improvement District et al., 262 U. S. 710, 43 S. Ct. 694, 67 L. Ed. 1194; Western & Atlantic R. R. v. Georgia Public Service Commission et al., 267 U. S. 493, 45 S. Ct. 409, 69 L. Ed. 753. This court in McPhee & McGinnity Co. v. Union Pac. R. Co. et al., 158 F. 5, 9, 19, 87 C. C. A. 619, 623, 633, said:

"This railroad company had an established line of railroad through the city of Denver, and the tracks upon Blake street authorized by the ordinance were spur tracks from its main track for the benefit of parties who expected to build warehouses on vacant property abutting upon that street. * * * The suggestion that the license was unauthorized because the permitted tracks were not for public, but for private use, cannot prevail. In a sense every spur track to a private warehouse, manufacturing or trading establishment, is for the private use of those who own

and conduct the business therein. But in a larger sense, and in the true sense, every such railroad track is for the public use and for the public benefit, because it enables the public to exchange its commodities for those of the parties who conduct their business upon the track in a more facile and economical way. It reduces the prices of the articles carried to the consumers, and it increases commerce."

"Where the switch or spur reaches. and accommodates a number of mills, quarries or other establishments, it is held a public use." Lewis on Eminent Domain (2d Ed.) p. 439, § 171.

[9, 10] The Colorado statute (Gen. St. 1883, § 338) in effect when these tracks were laid provided for the acquiring of title to property necessary for the transaction of the business of a railroad. In 1891 (Laws Colo. 1891, p. 98, § 3) that statute was amended to read: "If any corporation formed for the purpose of constructing a * * * railroad line shall be unable to agree with the owner for the purchase of any real estate or right of way or easement or other right necessary or required for the purpose of any such corporation, for transacting its business, or for the right of way or any lawful purpose connected with the operations of the company, such corporation may acquire title to such real estate or right of way, or easement or other right, in the manner provided by law for the condemnation of real estate." Under the Colorado statute we are satisfied the defendant railroad could have acquired by condemnation at the time this suit was brought the land necessary for these tracks. Certainly the service of a large number of industries by these tracks where shipments were made in interstate commerce, and the use of the same for general switching purposes to the various industries besides the Armour and Arbuckle ones, establish under the authorities a use for public purposes.

[11] Plaintiff's answer to this is that the rule as to public use will not apply, unless the railroad tracks when constructed were immediately devoted to public use, such public use as would have justified condemnation; but we think the rule must be as to an ejectment suit that if, at the time such suit is brought, the use is of such public character as to authorize condemnation, the action of ejectment must fail. Otherwise, if the railroad were ousted from the property, it could immediately bring an action to condemn, which would make the ejectment proceeding a useless thing, and the law is not favorable to useless proceedings. Therefore in this action we think it quite unimportant, as bearing on

public user, whether immediately upon construction the tracks were devoted to a public use, which is a matter of doubt under the record, since unquestionably for practically 30 years before the bringing of the action they were devoted to such use under circumstances which must have conveyed notice to plaintiff, and plaintiff permitted, with no objection, the railroad to devote the same to such use. The enlarged and different use of the tracks commenced in 1890. Certainly under these circumstances, if plaintiff has a remedy for an alleged infraction of its rights, it cannot be an action in ejectment. We discuss later some of the evidence bearing on public use in considering the question of title by prescription.

[12-14] *Prescription.*—The right to an easement may, of course, be acquired by prescription. Use and time enter into such title. The elements thereof are open, visible, and continuous use under claim of right, adverse to and with the knowledge of the owner of the property. While a title by prescription does not rest upon statutes of limitation, the courts incline to consider a prescriptive period as analogous to the time fixed by the law of the state as to limitations for commencing actions for recovery of real property. It may be noted in passing that all of the defendants pleaded the defense of the statute of limitations. Plaintiff acquired its title in the year 1909. The railroad tracks in question, with some slight, but not material, changes in location since, were laid in 1882 at a time when all of lots 1 to 16 in block 23 were in a single ownership.

It appears from the evidence that at the time plaintiff acquired title to the property the Union Pacific Railroad Company was operating its engines and cars on tracks across portions of said property, for the purpose of placing cars at various industries in that block. The tracks were also being used by defendant railroad company for certain switchback operations, to place cars at industries to the north. This later use by the railroad company, evidently under claim of right, had been continuous since 1890. The record does not disclose under what arrangement the tracks were originally laid on the property in question. For a period of three years after 1882 it is apparent that some gates existed across the tracks adjacent to the so-called Hallack property, which was in block 24, and where the tenant, one Hallack, was maintaining a lumber yard. The purpose of these gates is not clear, but it is insisted by plaintiff that they show a permissive use, and contradict any claim of adverse user. There is

evidence that the gates were constructed to protect the Hallack lumber yard from thievery, but we think it cannot be said that for these three years the use of the tracks was clearly adverse. Long prior, however, to the acquisition of the property by plaintiff, the use of the gates had entirely ceased and they had disappeared.

In 1910, due to the construction of a viaduct on Twentieth street, an attempt was made to shift tracks in a way to facilitate the building thereof. Some question then arose about the tracks on the Hallack property, and there were negotiations with the Armour interests and the Arbuckle heirs to move the easterly track in a way which would clear the plaintiff's property. At that time the westerly track was connected with the easterly track by a crossover, and a considerable part of the westerly track was removed from plaintiff's property.

[15] It seems, however, from the evidence, that these changes were made at the instance of Mr. Barr, who was general manager and spokesman for plaintiff. We do not think such changes, made at the request of plaintiff, would interrupt the running of the prescriptive period, or in any way impair rights already accrued, as the continuity of the use was not broken. Bolton v. Murphy et al., 41 Utah, 591, 127 P. 335; Berkey & Gay Furniture Co. et al. v. Valley City Milling Co., 194 Mich. 234, 160 N. W. 648.

There was some controversy between the railroad company and the plaintiff, and a number of letters appear in evidence relating to the general situation which furnish arguments on both sides of the question of adverse user. On November 25, 1912, Mr. Park, attorney for plaintiff, wrote to Arbuckle Bros., in which letter he advised them that the plaintiff was the owner of railway track No. 1 on Walter Court, together with the land upon which it is situated, and that they had been using the track for a number of years past without right, and advised them of the charges that would be made for the use of the track. Bills were presented for said use, but were never paid, and the Arbuckle heirs continued to receive service by the use of the tracks across plaintiff's land. It must have been apparent at that time to plaintiff that the tracks were being used adversely to its interests. When the westerly of the two tracks was cut early in 1910, and a connection made with the easterly or Armour track, which was after the time plaintiff had acquired its property, as soon as the fact became known to the general officers of the railroad company, Mr. Huntley, its chief engineer, took up the mat-

ter with the superintendent at Denver, to learn by what authority the track had been taken up and the connection made. Mr. Davis, who was the division engineer, testifies that he took the matter up with Mr. Barr, and that Mr. Barr, on November 1, 1910, wrote a letter for him to deliver to Mr. Huntley, explaining the entire situation. This letter showed knowledge on the part of Barr that the easterly track was partly on plaintiff's ground. It also disclosed that plaintiff had an agreement with Armour & Co. as to this track, and in this letter Barr said:

"We are leaving our property in such shape that, when we get ready to have this track relocated across the back end of these lots on a certain other proposition we have in mind, it can be put back, but in the meantime request your people here to leave the track out, because it interferes with our getting through there with wagons. If you were here on the ground, you could see instantly how the situation is, and that it is all right. We are leaving the tracks in all the way across Twentieth street and running through the Cantilever, which we arranged for some months ago, allowing both tracks to come across the street under the Cantilever, so that at some future time we can carry through these future plans.

"Leaving this piece of track out does not in any way interfere with the service that takes place for the convenience of the Colorado Warehouse people. We have done everything possible to accommodate them, and they are not willing to spend a cent to accommodate themselves. If you will allow us to work with you in this matter, there will be no trouble whatever. You know, Mr. Huntley, that we are working with you, and not against you, in every way, shape, and form."

This letter would seem to be an admission by plaintiff of the right of the railroad company to maintain the westerly track in its original position and to replace it when it might see fit. It requests the railroad company not to exercise such right at that time. This letter indicates that plaintiff knew the railroad company was claiming the right to its tracks adverse and hostile to plaintiff, and that plaintiff conceded such right. At the time of bringing this action the tracks, with the changes heretofore mentioned and possibly some other slight changes, had been in use on the property of plaintiff and its predecessors for 38 years, for 35 years after any question of permissive right by reason of gates had been eliminated, for 30 years from the time the use by the railroad of the tracks for the switchback operations had commenced, and for 26 years from the time when the predecessors in title of plaintiff entered into possession of the land.

[16] There is a presumption of adverse user after the prescription period has expired. In Haines et al. v. Marshall, 67 Colo. 28, 31, 32, 185 P. 651, 652, the court said: "This covers a period of 34 years. Such period is unquestionably long enough to enable the plaintiff to claim the right to store water in the reservoir, as an easement acquired by prescription. The evidence shows that the use was uninterrupted for that length of time. The presumption is, therefore, that such use was adverse and under a claim of right." Even granting the contention that the original occupation was permissive, the character of occupation might change, as apparently it did here. The gates ceased to exist after 3 years. The railroad company added additional burdens to the trackage in the way of switchback movements, which were a part of its general switching system, and, according to the evidence, these switchback movements to the other industries occurred every day.

[17, 18] Of course, it must clearly appear that, if the use changed from permissive to adverse, such knowledge must be brought home to the owner of the property, and the burden is on the party alleging such change of use to show it has become adverse. Where, as in this case, it appears that the trackage in question has been used without interruption or objection by any of the owners of the land, openly, continuously, and under claim of right adverse to the owners of the legal title, for over 30 years, the mere fact that for 3 years after the tracks were laid and prior to their enlarged uses certain property owners adjacent thereto maintained gates over the tracks for purposes not clearly disclosed would not be sufficient to prevent the acquisition of an easement by prescription. The period of time for which these tracks have been used exclusive of the 3 years when the gates existed would be more than the time fixed by the laws of Colorado as the limitation for the recovery of real estate. The same is true as to the period of time since the enlarged usage of the tracks commenced; to wit, 1890.

In the case of Latta v. Clifford et al. (C. C.) a Colorado case, 45 F. 108, 109, Judge Hallett quoted with approval from Washburn on Easements as follows: "In the United States, grants of incorporeal hereditaments are presumed upon proof of an adverse enjoyment which has been exclusive and uninterrupted for 20 years, or the period of time fixed by the respective statutes of the several states as the limitation in respect to lands themselves." In Gyra v. Windler, 40 Colo. 366, 369, 91 P. 36, 37 (13 Ann. Cas. 841), the

Supreme Court of Colorado stated the rule as follows: "But though a right of way cannot be gained by the parol agreement of him who creates it, yet where, under such agreement, the owner of the dominant estate used the way thus created for 20 years, and the same was acquiesced in by the owner of the servient estate, it was held to be such an exercise of the way, under a claim of right, as to gain thereby a prescriptive right to the same." In this case the Colorado court held that user under claim of right for more than 20 years with acquiescence by the owner was sufficient as a basis of a title by prescription.

[19] Without reviewing in extenso the evidence in this case, which we have carefully examined, we are satisfied that it shows such continuous adverse use of this trackage on the lands of plaintiff under claim of right as to constitute an easement by prescription.

The court indicated it was not holding with the other defendants, Armour & Co., and the Arbuckle heirs, in their claim of a servitude or easement across plaintiff's property. The court said: "You are not entitled to a verdict that you have any easement against them on any property that belongs to Ayres. They are not entitled to any damages. You, like everybody else, have the right to use the track, which the court finds the railroad has a right to maintain." Also: "I don't want to find that these defendants are entitled to an easement." Defendants dismissed their equitable counterclaim, seeking to establish some easement, although it is true these easements were set up as defenses to the law action.

As the action in ejectment must fail as to the Union Pacific Railroad Company, it must fail as to the other defendants, whose rights to a large extent are dependent upon the rights of the Union Pacific Railroad Company and arrangements made with it. Had the equitable issues presented by the defendants Armour & Co. and the Arbuckle heirs been tried before the law questions were determined, it would have simplified this matter and avoided some apparent confusion. We are now practically asked to pass on the equitable issues. We, of course, decline so to do, and make no holding as to the servitudes or easements claimed by Armour & Co. and the Arbuckle heirs. These questions may arise in some proper subsequent proceeding. Our holding merely goes to the question that the court did not err in instructing a verdict for all defendants. That is the determinative question here. The multitude of other questions raised need not be discussed.

The judgment is affirmed.