*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 23**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SRB INVESTMENT CO., LTD and GARY TOOKE,
*Appellants,*

*v.*

DALE ORSON SPENCER, *et al.,*[1]
*Appellees.*

No. 20190034
Heard December 11, 2019
Filed May 8, 2020

On Direct Appeal

Sixth District, Kanab
The Honorable Paul D. Lyman
No. 120600113

Attorneys:

V. Lowry Snow, W. Devin Snow, St. George, for appellants

Clifford V. Dunn, Michael C. Dunn, St. George, for appellees

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

---

[1] MARY ELLEN SPENCER; MARK D. SPENCER; CHARLENE SPENCER; DALE and MARY ELLEN SPENCER, trustees of THE DALE AND MARY ELLEN SPENCER FAMILY TRUST; SPENCER RANCH INC.; KOB PROPERTIES, LLC; and THE GOOD DAY RANCH, LLC are also appellees.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1    SRB Investment Company[2] sought access to its property through a prescriptive easement crossing land owned by the Spencer family. The district court determined that SRB had established this easement. But the court prohibited SRB from using the easement for any reason other than to access the SRB property for the purposes of ranching or farming. Because the court improperly focused on the purposes for which SRB's land would be used, rather than on the purpose for which the relevant portion of the Spencer property would be used, we reverse its determination and remand for a new determination regarding the scope of the easement. On remand, the court should take a flexible approach to determining the scope of the prescriptive easement—an approach that permits changes in the use of the parties' respective property rights so long as those changes do not *materially* increase the burden imposed on either party.

**Background**

¶2    For well over twenty years, Norman Carroll used a road crossing real property owned by the Spencer family to access his own property. But in 2005, Mr. Carroll sold his property to SRB Investment Company. Although Mr. Carroll had principally used his property only for ranching and farming, SRB purchased the property with the intent to use it as a cabin vacation spot for its members.

¶3    Some time after SRB purchased the property, the Spencers objected to SRB's continued use of the portion of the road crossing the Spencer property. In response, SRB filed this action in order to regain access to the property.

¶4    After a one-day bench trial, the district court determined that SRB had acquired a prescriptive easement across the Spencer property. And, citing Utah case law, it held that the scope of the easement needed to be limited to its historical usage. In determining the easement's historical usage, the court found that "almost all of the relevant evidence" came from Mr. Carroll's deposition testimony.

---

[2] We refer to appellants SRB Investment Company and Gary Tooke collectively as SRB. And we refer to appellees collectively as the Spencers or the Spencer family.

¶5 Based on Mr. Carroll's testimony, the court held the following: (1) the easement was limited to "vehicular travel in daily uses for farming and ranching purposes, and uses at random times for random reasons" and (2) "[m]ultiple house buildings on the SRB Parcel are outside the scope of the prescriptive easement's historic[al] usage, but a camp or other [temporary] building or vehicle that is ancillary to farming and ranching used on the SRB Property would not be outside the scope." SRB appealed this determination. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## Standard of Review

¶6 In determining whether a prescriptive easement exists, a district court must make a number of factual findings regarding the duration and nature of the easement's use. The court must also correctly identify the legal standard governing the creation of a prescriptive easement. And it must correctly apply that legal standard to its factual findings. In reviewing these determinations on appeal, we review the district court's conclusions regarding the legal standard for correctness.[3] And we review the court's factual findings, including how the court applied those findings to the correct legal standard, for an abuse of discretion.[4]

## Analysis

¶7 SRB argues the district court erred in defining the scope of the easement based on how SRB used its own property during the prescriptive period. Instead, SRB argues that the court should have defined the scope of the easement based on how SRB used the Spencer's property during that period. We agree and remand this case to the district court for a new determination, consistent with the legal principles outlined in this opinion, regarding the easement's scope.

---

[3] *See Schroeder v. Utah Atty. Gen.'s Office*, 2015 UT 77, ¶ 17, 358 P.3d 1075.

[4] *Judd v. Bowen*, 2018 UT 47, ¶ 8, 428 P.3d 1032 (explaining that "such a determination is the type of highly fact-dependent question, with numerous potential fact patterns, which accords the trial judge a broad measure of discretion when applying the correct legal standard to the given set of facts"(citations omitted) (internal quotation marks omitted)).

¶8 We have long held that "the extent of a prescriptive easement is measured and limited by its historic[al] use during the prescriptive period."[5] The district court cited this rule in limiting the scope of the easement across the Spencer property. But, in so doing, the court limited the use of the easement to "vehicular travel in daily uses for farming and ranching purposes, and uses at random times for random reasons." It also appeared to limit SRB's use of SRB's own property by stating that "[m]ultiple house buildings on the SRB Parcel are outside the scope of the prescriptive easement's historic[al] usage, but a camp or other [temporary] building or vehicle that is ancillary to farming and ranching uses on the SRB Property would not be outside the scope." By limiting the scope of the easement in this way, the district court erred.

¶9 The district court erred because it erroneously equated the "purpose" for which SRB's property—the dominant estate—was used with the "extent" of the easement's historical use over the Spencer property—the servient estate. This is inconsistent with basic principles underlying the prescriptive easement doctrine.

¶10 When the principles underlying the prescriptive easement doctrine are considered, together with our case law, an important distinction between a prescriptive easement's "type" (or "purpose") and a prescriptive easement's "scope" emerges. Under this distinction, a prescriptive easement's type should be categorized broadly based on the general purpose for which the easement over the servient estate has historically been used. And a prescriptive easement's scope should be defined with particularity based on the nature, or extent, of that historical use. We discuss this distinction in greater detail before applying it to the facts of this case.

## I. There is an Important Distinction Between a Prescriptive Easement's Type and Its Scope

¶11 "It is elementary that the use of an easement must be as reasonable and as little burdensome to the servient estate as the *nature* of the easement and its *purpose* will permit."[6] Although our case law has never explicitly distinguished between a prescriptive easement's type—as defined by its historical *purpose*—and its

---

[5] *Valcarce v. Fitzgerald*, 961 P.2d 305, 312 (Utah 1998).

[6] *Big Cottonwood Tanner Ditch Co. v. Moyle*, 174 P.2d 148, 158 (Utah 1946) (emphasis added) (internal quotation marks omitted).

scope—as defined by the *nature* of its historical use—such a distinction is implicit in our previous prescriptive easement cases and is consistent with well-established prescriptive easement principles.

¶12 Our case law clearly establishes that there are different types of prescriptive easements.[7] The most common type of prescriptive easement is an access easement, or, in other words, an easement for ingress or egress across the servient estate.[8] But we have also recognized other types of easements, such as easements for the purposes of recreation,[9] logging,[10] and irrigation.[11] And we have explained that an easement "for one purpose gained by user cannot be turned into a[n] [easement] for another purpose if the latter adds materially to the burden of the servient estate."[12] For this reason, the "first step in determining whether the holder of an easement is

---

[7] *See, e.g.*, *Richards v. Pines Ranch, Inc.*, 559 P.2d 948, 949 (Utah 1977) (distinguishing between an easement established for access and an easement for recreational purposes).

[8] *See, e.g.*, *Orton v. Carter*, 970 P.2d 1254 (Utah 1998) (concluding that each party owned an easement over a common lane for access purposes); *Crane v. Crane*, 683 P.2d 1062 (Utah 1984) (affirming the award of an easement to a grazing association to drive cattle over a limited area of a property twice a year); *Richards*, 559 P.2d at 948 (awarding the plaintiffs a prescriptive easement to cross over "a rough road across defendant's land"); *Richins v. Struhs*, 412 P.2d 314 (Utah 1966) (concluding that claimants had established a prescriptive easement to use a common driveway and bridge approaching the adjoining properties for access purposes); *Zollinger v. Frank*, 175 P.2d 714, 715 (Utah 1946) (affirming the claimant's right to use a strip of his neighbor's land for "the purpose of traveling" to his land from a public road); *Judd v. Bowen*, 2017 UT App 56, ¶ 43, 397 P.3d 686 (explaining that "most prescriptive easements consist of one version or another of a right merely to pass over another's land, such as a right-of-way, for purposes related to access or ingress and egress").

[9] *Richards*, 559 P.2d at 949.

[10] *Id.*

[11] *Big Cottonwood Tanner Ditch Co.*, 174 P.2d at 158.

[12] *Nielson v. Sandberg*, 141 P.2d 696, 701 (Utah 1943) (internal quotation marks omitted).

entitled to make a particular use challenged by the owner of the servient estate is to determine whether the use falls within the *purposes* for which the [prescriptive easement] was created."[13]

¶13 But the purpose for which a prescriptive easement was created is not the only limiting factor in defining the easement. We have also explained that the extent of a prescriptive easement is measured and limited by the nature of the use made during the prescriptive period.[14] Utah courts often refer to this second form of limitation as the "scope" of the easement.[15]

¶14 Thus our case law establishes that a prescriptive easement should be defined generally by type—based on the purpose for which it was acquired—as well as specifically by scope—based on the nature and extent of the easement's historical use. But even though an easement's type and scope both work to define the extent of the rights enjoyed through a prescriptive easement, the limitations imposed by the type and scope should be analyzed separately.

## II. The Type of a Prescriptive Easement Should be Defined Broadly Based on the Purpose for Which the Servient Estate was Used

¶15 Because a prescriptive easement acquired "for one purpose . . . cannot be turned into a[n] [easement] for another purpose if the latter adds materially to the burden of the servient estate,"[16] the "outcome in any particular case" may hinge on "the level of

---

[13] RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. d (AM. LAW INST. 2000) (emphasis added).

[14] *See Crane*, 683 P.2d at 1068 (approving the district court's decision in which it limited "the nature and extent of the use by which it was acquired"); *McBride v. McBride*, 581 P.2d 996, 997 (Utah 1978).

[15] *See, e.g., Judd*, 2017 UT App 56, ¶ 43 ("[A] review of cases in which our courts have awarded or affirmed awards of prescriptive easements suggests that the balance has been struck by limiting the scope of a prescriptive easement to the sort of transitory uses which place relatively minimal burdens on the landowner's own use of the property.").

[16] *Nielson v. Sandberg*, 141 P.2d 696, 701 (Utah 1943) (internal quotation marks omitted).

generality with which the purpose is defined."[17] So, for example, the purpose of the easement in this case could be broadly defined as an easement to access the dominant estate. Or, as the district court's order illustrates, it could be narrowly defined as an easement to access the dominant estate for farming and ranching activities. But our case law suggests that the type, or purpose, of a prescriptive easement should be defined broadly.

¶16 For example, in describing the purpose of an access easement, we typically characterize the purpose as being to access another property without further identifying the purpose for which that property was being accessed.[18] Likewise, we have defined easements used for "recreational purposes" without specifically identifying the types of recreation.[19] And we have discussed an easement for "the purpose of discharging" water "across the premises of the plaintiffs" without discussing the purpose for which the water would be used.[20] So our case law suggests that when describing the easement's purpose we need only do so in broad terms.

¶17 Accordingly, courts should construe the general purpose of a prescriptive easement broadly. And once this general purpose is determined, any use of the servient estate that is for another purpose

---

[17] RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. d (AM. LAW INST. 2000) (emphasis added).

[18] *See, e.g.*, *Orton v. Carter*, 970 P.2d 1254 (Utah 1998) (concluding that each party owned an easement over a common lane for access purposes); *Richins v. Struhs*, 412 P.2d 314 (Utah 1966) (concluding that claimants had established a prescriptive easement to use a common driveway and bridge approaching the adjoining properties for access purposes); *Zollinger v. Frank*, 175 P.2d 714, 715 (Utah 1946) (affirming the claimant's right to use a strip of his neighbor's land for "the purpose of traveling" to his land from a public road); *Judd v. Bowen*, 2017 UT App 56, ¶ 43, 397 P.3d 686 (explaining that "most prescriptive easements consist of one version or another of a right merely to pass over another's land, such as a right-of-way, for purposes related to access or ingress and egress").

[19] *See Richards v. Pines Ranch, Inc.*, 559 P.2d 948, 949 (Utah 1977).

[20] *Hubble v. Cache Cty. Drainage Dist. No. 3*, 259 P.2d 893, 895 (Utah 1953).

is impermissible unless the burden imposed on the servient estate by the change is immaterial.

¶18 In applying this rule to this case, the factual findings of the district court suggest that the purpose of the prescriptive easement at issue is to provide access to SRB's property. The court held that "the essentially unrefuted testimony of Norman H. Carroll clearly and convincingly establish[ed] that a prescriptive easement was created" to access "the SRB Parcel." Accordingly, the general purpose of the easement should be defined broadly as being for access to SRB's property, and any use of the servient estate, other than for access to the SRB property, should be deemed permissible only if it does not materially add to the burden imposed by the access easement.

III. The Extent, or Scope of Permissible Use, of a Prescriptive Easement Should be Limited by the Nature of its Historical Use

¶19 In contrast to the broad characterization of a prescriptive easement's purpose, our case law suggests that we must define the specific nature, or scope, of the easement's historical use with particularity. This is so because "the extent of a prescriptive [right] is measured and limited by its historic[al] use during the prescriptive period."[21] And that right "cannot be enlarged to place a greater burden or servitude" on the servient estate.[22] In other words, the extent of a prescriptive easement is measured by the burden historically imposed on the servient estate during the prescriptive period. Because the ultimate aim in determining the extent (or scope) of a prescriptive easement is to limit the burden on the servient

---

[21] *Valcarce v. Fitzgerald*, 961 P.2d 305, 312 (Utah 1998); *see also Nyman v. Anchor Dev., L.L.C.*, 2003 UT 27, ¶ 18, 73 P.3d 357 ("Here, the term 'use' implies an inherent distinction in the property rights conferred by an easement, on the one hand, and outright ownership, on the other. 'A prescriptive easement does not result in ownership, but allows only use of property belonging to another for a limited purpose.'" (citation omitted)).

[22] *Valcarce*, 961 P.2d at 312 (internal quotation marks omitted); *see also Nielson v. Sandberg*, 141 P.2d 696, 701 (Utah 1943) ("The use during the prescriptive period is the only indication of the nature and extent of the right acquired. The servient estate can only be subjected to the easement to the extent to which the easement was acquired, and the easement owner cannot change this use so as to put any greater burden upon the servient estate." (citation omitted)).

estate to what had been imposed historically, courts should consider only those factors that are helpful in determining the nature of the historical burden imposed on the servient estate.[23]

*A. The scope of a prescriptive easement must be limited by the burdens imposed by its historical use*

¶20 There are a number of factors that courts consistently consider in determining the scope of a prescriptive easement. As discussed above, the purpose of considering these factors is to determine the burden that has historically been placed on the servient estate. With this purpose in mind, courts almost always consider the physical dimensions of the historical use of the servient estate. They also consider the frequency and intensity of the use, as well as the effect of the use on the aesthetic and economic value of the property.[24]

¶21 For example, in *Crane v. Crane*,[25] we considered the appropriate scope of a prescriptive easement for access. The prescriptive easement in question had been used historically to transport approximately 150 cattle each spring, and 400 cattle each fall, across the property.[26] Based on this historical use, the district court held that the easement could be used "one day in the spring of each year and up to ten days in the fall of each year."[27] And the court limited the use to "up to 350 head of cattle during the 10 days in the fall."[28] In reviewing this decision, we held that the district court "appropriately limit[ed] the easement in gross to the nature and extent of the use by which it was acquired."[29] But we noted that even though the district court limited the number of cattle in the fall, it

---

[23] *Hubble v. Cache Cty. Drainage Dist. No. 3*, 259 P.2d 893, 895 (Utah 1953) (explaining that all of the alleged errors in the case focused on "substantially the same point": "the burden on the servient estate").

[24] *See* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. f (AM. LAW INST. 2000) (describing the nature of use as the "manner, frequency, and intensity of the use").

[25] 683 P.2d 1062 (Utah 1984).

[26] *Id.* at 1064.

[27] *Id.* at 1064 n.1.

[28] *Id.*

[29] *Id.* at 1068.

failed to do so in the spring.[30] Accordingly, we modified the district court's order to include this additional limitation.[31] In this way, we ensured that the burden—stated in terms of the frequency and intensity of the use—imposed on the servient estate by the judicially recognized prescriptive easement did not exceed the burden that had historically been imposed.[32]

¶22 Even though courts will almost always consider the physical dimensions of the land used, as well as the frequency and intensity of that use, the "ultimate criterion" in determining the scope of a prescriptive easement is that of avoiding increased burdens on the servient estate.[33] So courts should consider any and all factors that may contribute to that burden.

¶23 For instance, in determining the scope of access easements, courts often consider the mode of transportation that has historically been used for access. But, importantly, this factor is considered only

---

[30] *Id.*

[31] *Id.*

[32] The focus on the burdens imposed by a prescriptive use is consistent with equitable principles. This is because, by permitting a prescriptive use to continue uninterrupted for twenty years, the landowner has demonstrated that the burden imposed by the prescriptive use is not too onerous to be born. But the same cannot be said about any change in use that materially increases the burden imposed on the servient estate. *See Harvey v. Haights Bench Irr. Co.*, 318 P.2d 343, 349 (Utah 1957) ("Since the right has its inception in the use during that time, its extent and limitations, its burdens and benefits are determined by the nature of that use and the understandings of the parties thereto. Thus any use which would have probably been interrupted by the owner of the servient estate had the owner of the dominant estate attempted such use prior to the expiration of the prescriptive period[] is a use which places a greater burden on the servient estate and therefore is beyond the prescriptive right acquired by the dominant estate." (emphasis omitted) (citation omitted)).

[33] 28A C.J.S. *Easements* § 194 ("The ultimate criterion determining the scope of a prescriptive easement is that of avoiding increased burdens on the servient tenement while allowing some flexibility in the use of the dominant tenement.").

where the mode of transportation affects the burden placed on the servient estate. For example, in *Gillmor v. Carter*, the district court reserved for trial the question of whether the defendant "had obtained a prescriptive right to personally travel over [an easement] by jeep, passenger car or panel truck," but it enjoined him from using a road "for the purpose of hauling salt or other minerals from the Great Salt Lake."[34] The defendant appealed this determination. On appeal, we explained that although the defendant had testified that he had used the road for over twenty years, his use of the road "did not include use of trucks for hauling heavy tonnage."[35] Because "hauling salt in heavy tonnages" would have imposed an additional "burden" on the servient estate than what was imposed by his use of smaller vehicles, we affirmed the district court's decision.[36] Thus our decision in *Gillmor* confirms that courts should consider any factors that may contribute to the overall burden imposed on the servient estate by the easement.[37]

*B. The subjective purpose in using an easement is relevant only to the extent it sheds light on the nature of the historical burden imposed on the servient estate*

¶24 Although, in determining the scope of a prescriptive easement, courts may consider a wide variety of factors, the subjective purpose for which a prescriptive easement is used should be considered only to the extent it is helpful in determining the nature of the burden historically placed on the servient estate. This is so because the purpose for which an easement holder uses the servient estate does not, in and of itself, burden the servient estate.

¶25 For example, in *Jesurum v. WBTSCC Limited Partnership*, the New Hampshire Supreme Court determined the scope of an easement providing access to a public beach across a private golf

---

[34] 391 P.2d 426, 426 (Utah 1964).

[35] *Id.* at 427.

[36] *Id.* at 428.

[37] *See also Williams v. Slate*, 415 S.W.2d 616, 618 (Ky. 1966) ("The easement acquired by prescription was for normal rural transportation purposes. Converting the passway to a haul-road for heavy coal trucks was an entirely new and heavily burdensome use unrelated to that which had theretofore existed.").

course.[38] The owner of the golf course argued that the easement "should be limited in scope to digging for worms and searching for shellfish because the first recorded use of [the easement across the golf course] was limited to those purposes."[39] But the court explained that this "argument confuse[d] the public use made of [the golf course] with the public use made of [the beach]."[40] Because the subjective purpose the prescriptive users may have had in using the easement was "irrelevant" to the burden imposed by the easement, the court correctly held that that purpose was "not germane to the determination of the scope of the easement."[41] So the decision in *Jesurum* illustrates that in many cases, the purpose for which a prescriptive easement is used will not materially contribute to the burden imposed by that use.

¶26  But there may be instances where the purpose for which an easement is used provides the best evidence of the burden imposed on the servient estate. For example, in *Bolton v. Murphy* we considered the "nature or character of the use" of an access easement in a rural farming community.[42] In that case, a large number of plaintiffs claimed a prescriptive easement across the land of a neighbor to access a public highway.[43] The group of plaintiffs had used the easement for roughly fifty years to access their respective farms and homes.[44] Because the easement had been used so widely and for so long, the court was forced to articulate the scope of the easement in broad terms. It held that the easement could be used "for the purposes that roads are ordinarily used for by farmers in the vicinity."[45] In other words, in the absence of evidence of more specific limiting factors, the court in *Bolton* properly considered the purposes for which roads in the area were typically used as the best evidence of the burden imposed on the servient estate.

---

[38] 151 A.3d 949, 958 (N.H. 2016).

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] 127 P. 335, 339 (Utah 1912).

[43] *Id.* at 336–37.

[44] *Id.*

[45] *Id.* at 339.

¶27 Accordingly, in determining what the historical burden has been on a servient estate, courts may consider the subjective purpose for which an easement is used, but only to the extent it provides relevant evidence of the scope of that burden.

*C. The use of the dominant estate is likewise relevant only to the extent it sheds light on the nature of the historical burden imposed on the servient estate*

¶28 Similarly, an easement holder's use of the dominant estate may be considered in determining the scope of an easement, but only to the extent it provides information regarding the nature of the burden on the servient estate. Our decision in *Robins v. Roberts* illustrates this point.[46]

¶29 In *Robins*, the owner of the dominant estate replaced an earthen dam on his own property with a larger cement dam.[47] Although the owner of the dominant estate had previously acquired a prescriptive easement to flood a portion of the servient estate by using his dam, the owner of the servient estate attempted to restrain the owner of the dominant estate "from maintaining" the new cement dam.[48] Because the new cement dam was "five or six inches higher than the old one," the owner of the servient estate argued that its construction had enlarged the flooding easement on the servient estate.[49] But we disagreed. Although we acknowledged that the new dam was "five or six inches higher than the earthen dam it replaced," we explained that "it matters not that the dam itself is larger or occupies more ground" because the dam was not on the servient estate.[50] The only thing that was relevant, we explained, was whether the water flooding the servient estate exceeded the extent of the flooding "that was done by use of the old dam."[51] Because the evidence indicated that "[s]ubstantially the same amount of land [was] irrigated as was irrigated theretofore," we refused to order the

---

[46] 15 P.2d 340, 340 (Utah 1932).

[47] *Id.*

[48] *Id.*

[49] *Id.* at 342.

[50] *Id.*

[51] *Id.*

owner of the dominant estate to remove his new dam.[52] So our decision in *Robins* illustrates that the nature of the usage of the dominant estate is irrelevant except to the extent it provides information that would be helpful in determining the burden placed on the servient estate.

¶30 The reasoning in *Robins* is consistent with the approach followed in other jurisdictions. For example, in *Gaither v. Gaither*, a California court of appeals held that a prescriptive easement that had formerly been used to access the dominant estate, which had historically been used "for farming purposes," could also be used to access recently constructed rental units on the property.[53] In so holding, the court explained that the change did not increase the burden on the servient estate because the change did not affect "the physical objects [(vehicles)] passing over the driveway.[54] In other words, the court found that the purpose for which the dominant estate was being used was irrelevant to a determination of the burden that had historically been imposed on the servient estate. As the decision in *Gaither* illustrates, our case law is consistent with the approach generally followed in other jurisdictions.

¶31 Accordingly, the purposes for which the dominant estate is used is relevant to a determination of the permitted uses of a prescriptive easement only to the extent it provides information regarding the nature of the burden imposed on the servient estate. In other words, where a change in the purpose for which a dominant estate is used does not increase the burden imposed on the servient estate, that change is irrelevant in determining the scope of a prescriptive easement.[55]

---

[52] *Id.*

[53] 332 P.2d 436, 438 (Cal. Dist. Ct. App. 1958).

[54] *Id.*

[55] *See* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. f (AM. LAW INST. 2000) ("If the change in use of the dominant estate, or enterprise benefited by the easement, brings no change in the physical use of the easement, the dominant owner may continue to use the easement.").

*D. Utah follows the majority rule that the nature of a use can be altered reasonably*

¶32  Although the ultimate criterion in determining the scope of a prescriptive easement is to limit the burden imposed on the servient estate to what has been imposed historically, Utah allows reasonable changes to be made by both the easement holder and the owner of the servient estate so long as it does not materially increase the burden imposed on either party.

¶33  We have held that a "right of way for one purpose gained by user cannot be turned into a right of way for another purpose if the latter adds materially to the burden of the servient estate."[56] We have also held that "an alteration in the easement requires the consent of the other party *unless* it can be considered to be of such an immaterial character as would not interfere with the reasonable enjoyment of the easement."[57] And we have held that the "right of the easement owner and the right of the land-owner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both."[58] As these holdings indicate, in considering changes to the use of an easement or the servient estate, we apply a flexible rule that seeks to accommodate reasonable changes in use.

¶34  This rule was applied in our 1976 decision in *North Union Canal Co. v. Newell*.[59] In that case a canal company sought to enjoin the owners of the servient estate from maintaining a fence around their property because it placed a burden on the canal company's easement right to enter the property for the purpose of performing maintenance on its canal.[60] In considering this argument, we observed that whenever "there is ownership of property subject to an easement there is a dichotomy of interests, both of which must be

---

[56] *Nielson*, 141 P.2d at 701 (citation omitted) (internal quotation marks omitted).

[57] *McBride v. McBride*, 581 P.2d 996, 998 (Utah 1978) (emphasis added) (footnotes omitted).

[58] *Big Cottonwood Tanner Ditch Co. v. Moyle*, 174 P.2d 148, 158 (Utah 1946).

[59] 550 P.2d 178 (Utah 1976).

[60] *Id.* at 179.

respected and kept in balance."[61] We then noted that the fence constructed on the servient estate "would interfere with the [canal company's] use and enjoyment of its easement."[62] "From this," we explained, "the logical conclusion would seem to be that the fence should be removed."[63] But we declined to order the fence's removal.

¶35 In declining to order "such a stringent measure," we explained that "the object to be desired [in easement cases] is to find some accommodation of those conflicting interests, to the maximum advantage and to the minimum disadvantage[] of both parties."[64] So with this object in mind, we declined to order the removal of the fence, but we ordered the owners of the servient estate to maintain gates "at reasonable intervals in the fence along the canal bank to allow the [canal company] access thereto as its needs may arise."[65] Accordingly, our decision in *North Union Canal Co.* confirms that, in considering changes to the use of an easement or the servient estate, we apply a flexible rule that seeks to accommodate reasonable changes in use. And our case law suggests that a reasonable change in use is any change that does not materially increase the burden on the servient estate or materially restrict the use of the easement.

¶36 This flexible approach is consistent with the approach followed in a majority of jurisdictions.[66] For example, the Alaska Supreme Court has held that "the use made of a prescriptive

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.* at 179–80.

[65] *Id.* at 180.

[66] *See* RESTATEMENT (FIRST) OF PROPERTY § 477 cmt. b (AM. LAW INST. 1944) ("Yet, no use can ever be exactly duplicated. If any practically useful easement is ever to arise by prescription, the use permitted under it must vary in some degree from the use by which it was created. Hence, the use under which a prescriptive interest arises determines the general outlines rather than the minute details of the interest."); RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 (AM. LAW INST. 2000) ("The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefited by the servitude.").

easement may evolve beyond the original prescriptive uses, [but] new uses cannot substantially increase the burden on the servient estate."[67] And a Connecticut appellate court has explained that one "who has an easement by prescription has the right to do such acts that are reasonable and necessary to effectuate that party's enjoyment of the easement unless it unreasonably increases the burden on the servient tenement."[68]

¶37  According to the Maine Supreme Judicial Court, this flexible approach is essential to preserve the usefulness of a prescriptive right over time.[69] And we endorsed a similar rationale in our *Big Cottonwood Tanner Ditch Co.* case.[70] In that case we cited the rule that "the extent of an easement acquired by prescription is measured and limited by the use made during the prescriptive period."[71] But we cautioned against applying this rule "with absolute strictness" because doing so would render the prescriptive right "of no utility whatsoever."[72] Accordingly, our decision in *Big Cottonwood Tanner Ditch Co.* suggests that prescriptive rights, where established, should be construed to preserve their usefulness over time.

¶38  In sum, when asked to determine the scope of a prescriptive easement, or whether a particular use is permitted under that easement, courts should consider any and all factors that are helpful in determining the extent of the historical burden on the servient

---

[67] *Price v. Eastham*, 75 P.3d 1051, 1058 (Alaska 2003).

[68] *Hoffman Fuel Co. of Danbury v. Elliott*, 789 A.2d 1149, 1158 (Conn. App. Ct. 2002) (citation omitted).

[69] *Gutcheon v. Becton*, 585 A.2d 818, 822 (Me. 1991) ("In order to remain useful to the dominant estate it serves, a prescriptive right of way must encompass some flexibility of use, and adapt to natural and foreseeable developments in the use of the surrounding land. When presented with an alleged overburdening of a prescriptive easement, the factfinder must balance the prior use of the right of way established during the prescriptive period against any later changes in the method of use that unreasonably or unforeseeably interfere with the enjoyment of the servient estate by its current owner.").

[70] 174 P.2d at 157.

[71] *Id.*

[72] *Id.*

estate. Factors that courts should consider in almost every case are the physical dimensions of the prescriptive use, the frequency and intensity of the use, and the effect of the use on the aesthetic and economic value of the property. Additionally, courts may also consider the subjective purpose for using the easement, as well as the nature of the use of the dominant estate, but only to the extent those factors are helpful in determining the nature of the burden on the servient estate. Finally, in determining the scope of a prescriptive right, courts should take a flexible approach that permits changes of use so long as those changes do not materially burden the servient estate or materially interfere with the prescriptive right.

## IV. We Reverse the Judgment of the District Court and Remand for a New Determination Regarding the Scope of the Prescriptive Easement in this Case

¶39 With the correct approach to prescriptive easements in mind, we now consider the district court's determination in this case. In determining the easement's historical usage, the court found that "almost all of the relevant evidence" came from Mr. Carroll's deposition testimony. Based on this testimony, the court found that Mr. Carroll's uses had "almost all been farming or ranching related uses, along with trips to and from the SRB Parcel at random times and for random reasons." And after defining the purpose of the easement in this way, the court held the following: (1) the easement was limited to "vehicular travel in daily uses for farming and ranching purposes, and uses at random times for random reasons" and (2) "[m]ultiple house buildings on the SRB Parcel are outside the scope of the prescriptive easement's historic[al] usage, but a camp or other [temporary] building or vehicle that is ancillary to farming and ranching uses on the SRB Property would not be outside the scope." The court erred in making both of these determinations.

*A. The district court incorrectly limited the use of the access easement to only those people who would use it with the subjective purpose to farm or ranch on the SRB property*

¶40 First, the court erred by limiting the use of the access easement to only those people who would use it with the subjective purpose to farm or ranch on the SRB property. As we discussed above, the subjective purpose for which an easement is used is relevant only to the extent it provides evidence regarding the nature of the burden imposed on the servient estate. Thus the court erred in focusing on that fact to the exclusion of all other factors regarding the historical burden on the servient estate.

¶41  To be clear, we are not suggesting that, on remand, the court cannot consider the prescriptive users' subjective purpose in using the easement. The fact that the easement was historically used for ranching and farming could be helpful in establishing certain aspects of the burden imposed. For example, evidence related to farming or ranching activities on the SRB property could suggest that, historically, the physical dimensions of the easement were wide enough to allow large trucks, loaded with tractors or crops, to pass through. And, in the absence of better evidence, the fact that the SRB property was used for ranching or farming could also suggest that the nature of the use of the easement was seasonal and that the frequency of the use was less than that of a road leading to a residential or commercial area.[73]

¶42  But the fact that the easement was used to access the SRB property by people having the subjective purpose to ranch or farm does not, in and of itself, burden the Spencer property. And for this reason, the district court erred in limiting SRB's future use of the easement to those who use it intending to farm or ranch.

B. *The district court incorrectly limited SRB's use of the dominant estate*

¶43 Second, the district court erred in limiting SRB's use of SRB's own property. Although the limited scope of a prescriptive easement could, in practical effect, limit the uses to which SRB's property could be used, those limitations are not legally imposed by nature of SRB's prescriptive rights in the Spencer property. As we held in our decision in *Robins v. Roberts*, "it matters not" to the Spencers what SRB does on SRB's property because the Spencers have no legal right burdening that property.[74] And even though certain uses of the SRB property could lead to incidental increases on the burden imposed by the easement on the Spencer property, there is no indication that such an increase has occurred or would occur were SRB to build a few family cabins on the SRB property.

---

[73] We note that, consistent with Utah's flexible approach to easements—which seeks to resolve disputes to the maximum advantage and to the minimum disadvantage of both parties—a party's use of an easement that has historically been used only seasonally should be limited to that seasonal use only where more frequent use would materially increase the burden on the servient estate.

[74] 15 P.2d 340, 342 (Utah 1932).

¶44 The unrefuted deposition testimony of Norman Carroll informs us that the easement was used "sometimes daily in the spring and the harvest time." At another point, he testified that he traveled to his property "all the time"; that he used the easement "without any restrictions"; and that there was never a time that he was not permitted to use the property. And at the end of his testimony, he again testified that he used the road "unrestricted for all th[ose] years," that he "never had to ask for permission," and that he "used it for the operation of [the SRB] property."

¶45 In addition to testimony regarding the frequency of the easement's use, there is ample testimony regarding the intensity of that use. Mr. Carroll testified that he regularly drove "big trucks in" across the property. He also testified that he used the road to transport "all the farm equipment," "harvesting equipment," and "the camps." And that it was used to haul water to the livestock and to haul off crops, as well as to transport horses in horse trailers.

¶46 So the record contains ample evidence regarding the nature of the burden imposed on the Spencer property by the historical use of the easement. Because this evidence speaks more directly to the burden imposed on the Spencer property than does evidence regarding the historical use of SRB's property, the evidentiary value regarding the use of SRB's property appears to be minimal. And, even more importantly, the Spencers have failed to point to any evidence to suggest that a conversion of the SRB property from a farming and ranching property to a cabin property, with a few cabins, would increase the burden on the servient estate. So the district court erred in imposing restrictions on how SRB may use SRB's property.

¶47 In sum, the district court erred by incorrectly limiting the use of the easement to only those people who would use it for the purposes of ranching and farming and by limiting SRB's use of its own property.

¶48 Because the district court erred in describing the scope of the prescriptive easement in this case, we remand for a new determination. On remand, the district court should be careful to consider only those factors that provide information regarding the burden that has been imposed historically by the easement on the Spencer property. Because the physical dimensions of the easement do not appear to be disputed, this determination should focus on the frequency and intensity of the use, the effect of the use on the aesthetic and economic value of the property, as well as any other factor relevant in determining the burden the use of the easement

has historically imposed on the servient estate. Additionally, in making this determination, the district court should employ a flexible approach that aims "to find some accommodation of [the parties'] conflicting interests, to the maximum advantage and to the minimum disadvantage[] of both parties,"[75] so that the prescriptive right retains its "utility"[76] for SRB without materially adding to the burden imposed on the Spencers.[77]

## Conclusion

¶49 When asked to determine the scope of a prescriptive easement, or whether a particular use is permitted under that easement, the ultimate aim of courts should be to preserve the utility of the prescriptive right without materially adding to the burden imposed on the servient estate. For this reason, the focus in a court's analysis should be on the burden historically imposed on the servient estate by the easement's use. In conducting this analysis, courts should almost always consider the physical dimensions of the prescriptive use, the frequency and intensity of the use, and the effect of the use on the aesthetic and economic value of the property. Additionally, courts may consider the subjective purpose for using the easement, as well as the nature of the use of the dominant estate, but only to the extent those factors are helpful in determining the nature of the burden on the servient estate. Finally, in determining the scope of a prescriptive right, courts should take a flexible approach that permits changes of use so long as those changes do not materially burden the servient estate or materially interfere with the prescriptive right. Because the district court's determination of the scope of the prescriptive easement in this case was inconsistent with these principles, we remand for a new determination.

------

[75] *North Union Canal Co. v. Newell*, 550 P.2d 178, 180 (Utah 1976).

[76] *Big Cottonwood Tanner Ditch Co. v. Moyle*, 174 P.2d 148, 157 (Utah 1946).

[77] *Nielson v. Sandberg*, 141 P.2d 696, 701 (Utah 1943).