**2023 UT App 120**

# THE UTAH COURT OF APPEALS

SRB INVESTMENT CO.,
*Appellee,*
*v.*
DALE ORSON SPENCER, ET AL.,[1]
*Appellants.*

Opinion
No. 20220195-CA
Filed October 5, 2023

Sixth District Court, Kanab Department
The Honorable Wallace A. Lee
No. 120600113

Clifford V. Dunn, Adam C. Dunn, and Michael C.
Dunn, Attorneys for Appellants

V. Lowry Snow, Devin Snow, and Devon J.
Herrmann, Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES RYAN M. HARRIS and AMY J. OLIVER concurred.

TENNEY, Judge:

¶1  SRB Investment Co. (SRB) owns a 240-acre parcel of property in rural Kane County. To access its property, SRB must cross through property owned by the Spencers. In 2012, the Spencers began refusing to let SRB cross through their property. SRB accordingly sued. At the conclusion of a bench trial, the district court ruled that SRB had a "flexibly located roadway easement" that allowed it to cross through the Spencers' property,

---

1. Additional Appellants include Mary C. Pedersen, George A. Pedersen, Mary Ellen Spencer, Mark D. Spencer, Charlene Spencer, Spencer Ranch, Inc., KOB Properties, LLC, and Good Day Ranch, LLC.

but that SRB's use was limited to "farming and ranching purposes, and uses at random times for random reasons."

¶2      SRB appealed, arguing that the limitations the court had imposed on its use were improper. *See SRB Inv. Co. v. Spencer* (*SRB I*), 2020 UT 23, 463 P.3d 654. The Utah Supreme Court agreed with SRB and vacated those limitations, and it then remanded with instructions for the district court to make a new determination about the scope of the easement. *Id.* ¶ 1. On remand, the district court ruled that SRB had a "flexible" easement to cross the Spencers' property. The court also ruled that the Spencers may only make "reasonable, minor changes" to the location of the road in question. The Spencers now appeal that determination, arguing that the court should not have limited their ability to change the road's location. For the reasons set forth below, we affirm.


BACKGROUND

*History of the Easement*

¶3      The Spencer family owns a large amount of property in a mostly undeveloped part of Kane County.[2] The Spencers' property is located on something of a bluff, and the area is sometimes referred to as "the Spencer Bench." SRB owns a 240-acre parcel of property on the Spencer Bench. Because of the topography, the only way to access SRB's property in a vehicle is to drive about three miles on Highway 89 beyond the SRB property and then traverse back to the property using a dirt road that crosses through property owned by the Spencers.

---

2. To be a bit more precise: this land is owned by a number of people or entities that are either directly related to the Spencer family or associated with them. For ease of reference, we'll refer to them collectively as the Spencers or the Spencer family.

¶4      Norman Carroll was the previous owner of the SRB property, and his father and grandfather had owned it before him. Carroll later recalled that in 1940, when he was about 10 years old, he "was going up" to the property "all the time."[3] He also recalled that from the 1940s on, his family accessed their property by using a dirt road that crossed through the Spencers' property.

¶5      Carroll and his family used their property for sheep grazing and wheat planting, so they transported "all the farm equipment," the "harvesting equipment," and "the camps" on the road that ran across the Spencer property. Carroll and his family used the road "for years and years and years," and when they did, they "never had to ask permission." Although the Spencers placed a gate with a lock across the road at certain times, they would tell the Carrolls where any key was or simply give a copy of the key to them.

¶6      The Carrolls weren't the only ones using the road. Other owners on the Spencer Bench also used the road. And this pattern of neighborliness ran both ways—the Carrolls allowed the Spencers' cattle to feed on their property when they weren't using it, and the Spencers were allowed to travel across the Carroll property to access certain portions of their own property.

¶7      Of particular note for this appeal, the Spencers would sometimes "cut variant roads randomly across their property," and when they did, the Carrolls would "use[] the newly cut roads." This process of the Spencers sometimes moving the road and the Carrolls then using the new one continued "as late as the 1990s or 2000s." But Carroll also said that "[f]or a long time, there

---

3. Norman Carroll was deposed while this case was pending, but he passed away before trial. His deposition was admitted at trial, and any references in this opinion to his statements are drawn from that deposition.

was only one" road and that when the Spencers did move it, its location was only "changed a little bit."

¶8     Sometime around 1980, a member of the Spencer family told Carroll that if Carroll ever wanted to sell his property, the Spencers would like to purchase it. This member of the Spencer family believed that he had "a verbal agreement" at that point in which the Spencers would be able to purchase the property if Carroll ever sold it. In 2005, however, Carroll sold the property to SRB.[4] Some of the Spencers believed that Carroll "had broken" the verbal agreement.

¶9     SRB "had no plans to develop" its property but instead "planned on splitting" it and building two family cabins on it. After SRB purchased the property from Carroll, however, the Spencers objected to SRB's continued use of the road that crossed through their property. The Spencers then built a house in the middle of the then-existing road, after which they "built a new variant" of the road nearby and began demanding payment from SRB for the right to use it. The SRB owners thought the Spencers were asking for an unreasonable amount of money, particularly given that Carroll had never been charged for his use of the road, so the SRB owners told the Spencers that they would not pay. In response, the Spencers put a locked gate across the road and didn't give SRB a key, thus effectively blocking SRB's access to its property.

*The District Court's Initial Ruling Regarding an Easement*

¶10     In 2012, SRB sued, asking for a judicial declaration that it had an "ingress and egress" easement across the Spencer

---

4. Stephan R. Brown formed SRB in the early 1990s to purchase real property for investment purposes, and SRB owns other real property near the Spencer Bench as well. Brown is SRB's general partner and his wife is "the only limited partner." The name "SRB" comes from Brown's initials.

property. After much litigation that's not relevant to this appeal, the district court held a bench trial in May 2018, after which it issued a written ruling.

¶11 The court noted that under Utah law, SRB was required to show that there had been "open, notorious, adverse, and continuous use [across the Spencer property] for at least 20 years." In its ruling, the court found that the relevant 20-year period for establishing a prescriptive easement "started in the 1940s and ended sometime in the 1960s" and that "a prescriptive easement" across the Spencer property had accordingly been established. The court ruled that this was a "flexibly located [r]oadway[] easement"—i.e., that the Spencers could "vary" the easement's location as they "reasonably wish to designate variant paths" and that SRB "should follow it, as has been done historically."

¶12 The court also ruled that the "scope of this easement" would be "limited by its historic use, which is farming and ranching, with trips to and from" SRB's property "at random times." Because of this conclusion, the court ruled that "house buildings" on the SRB property (such as cabins) would be "outside the scope of the prescriptive easement's historic usage" and that SRB could only use the easement to access "a camp or other building[s] or vehicle[s]" that are "ancillary to farming and ranching uses." The court then ordered the Spencers "to immediately provide access to [SRB] for their use" of this "prescriptive easement," and it also ordered them to "take no action that would prohibit [SRB] from use of the prescriptive easement."[5]

_____

5. Pursuant to rule 59(e) of the Utah Rules of Civil Procedure, the Spencers filed a motion to alter or amend this initial ruling. The merits of that motion are not at issue in this appeal. We do note, however, that the Spencers did not challenge the district court's

(continued…)

*SRB I*

¶13     SRB appealed, explaining that it was challenging "those parts of" the district court's rulings "that relate to the scope" of its prescriptive easement. In its appellate briefing, however, SRB did not challenge the court's ruling about the Spencers' ability to adjust the location of the easement. Instead, its briefing focused on other issues relating to the limitations on its use of the easement.

¶14     In May 2020, the Utah Supreme Court issued its decision. There, the supreme court held that the district court had "erred by limiting the use of the access easement to only those people who would use it with the subjective purpose to farm or ranch on the SRB property," and the supreme court further held that the district court had erred "in limiting SRB's use of SRB's own property." *SRB I*, 2020 UT 23, ¶¶ 40, 43, 463 P.3d 654.

¶15     In the supreme court's view, the improper limitations were part of the district court's ruling about the easement's scope. *Id.* ¶ 7. Because the supreme court concluded that "the district court erred in describing the scope of the prescriptive easement," it accordingly "remand[ed] for a new determination." *Id.* ¶ 48. The supreme court provided detailed guidance about the nature of the scope determination. It explained that

> when asked to determine the scope of a prescriptive easement, or whether a particular use is permitted under that easement, courts should consider any and all factors that are helpful in determining the extent of the historical burden on the servient estate. Factors that courts should consider in almost every case are the physical dimensions of the prescriptive

conclusion that a prescriptive easement existed, nor have they since appealed or otherwise argued that the easement itself should not be recognized.

use, the frequency and intensity of the use, and the effect of the use on the aesthetic and economic value of the property. Additionally, courts may consider the subjective purpose for using the easement, as well as the nature of the use of the dominant estate, but only to the extent those factors are helpful in determining the nature of the burden on the servient estate. Finally, in determining the scope of a prescriptive right, courts should take a flexible approach that permits changes of use so long as those changes do not materially burden the servient estate or materially interfere with the prescriptive right.

*Id.* ¶ 38.[6]

¶16   The supreme court thus directed the district court on remand to "be careful to consider only those factors that provide information regarding the burden that has been imposed historically by the easement on the Spencer property." *Id.* ¶ 48. The supreme court also directed the district court to "employ a flexible approach that aims to find some accommodation of the parties' conflicting interests, to the maximum advantage and to the minimum disadvantage of both parties, so that the prescriptive right retains its utility for SRB without materially adding to the burden imposed on the Spencers." *Id.* (quotation simplified).

---

6. A "servient estate" is "[a]n estate burdened by an easement," whereas a "dominant estate" is "[a]n estate that benefits from an easement." Black's Law Dictionary, *Estate* (11th ed. 2019). Consistent with this common understanding, the supreme court noted that the Spencers' property is the servient estate in this case and that SRB's property is the dominant estate. *SRB I*, 2020 UT 23, ¶ 9, 463 P.3d 654.

*Post-Remand Proceedings*

¶17 After the case returned to the district court, the parties disagreed about whether the court should hold a new evidentiary hearing before issuing a ruling about the scope of the easement. The Spencers thought that the court should hold such a hearing, while SRB believed that the supreme court's "directive may be carried out based on the facts that are already in the record."

¶18 After requesting and receiving supplemental briefing, the district court issued new findings of fact and conclusions of law regarding the scope of the prescriptive easement. Following what it understood to be the "mandate from the Supreme Court on remand," the court made findings about the nature and extent of the easement's historical use, the burden historically imposed on the Spencers' estate, the physical dimensions of the historical use of the easement, and the frequency and intensity of its use. From all this, the court ruled that the "easement may be used as often as necessary," that "[a]ny kind of motorized vehicle may be driven on the easement for ingress and egress to [SRB's] property," that "[s]upplies, agricultural materials, crops, and building materials may be transported over the easement at any time," and that "[p]ermission to use the easement is not required."

¶19 Relevant to this appeal, the ruling also included the following three paragraphs:

- Finding of Fact 18: "Use of the easement was limited to the travelled surface of the roadway."

- Conclusion of Law 9: The Spencers "may make reasonable, minor changes to the location of the easement in the future, but may not diminish the current width of the traveled way or ease of use."

- Conclusion of Law 13: "The scope of the easement shall hereafter be construed in a flexible manner which

'permits changes of use so long as those changes do not materially burden the servient estate or materially interfere with the prescriptive right.'" (Quoting *SRB I*, 2020 UT 23, ¶ 49.)

¶20 After this ruling was issued, the Spencers filed a rule 59 motion to alter or amend it. The Spencers had three main requests. First, they asked the court to alter Finding of Fact 18, requesting that the court now state that the historical road was "limited in width to a maximum of fourteen feet." Second, the Spencers asked the court to remove the word "minor" from Conclusion of Law 9. And third, the Spencers asked the court to include language in Conclusion of Law 13 stating that they are allowed to "change the location of the easement."

¶21 With respect to their second and third requests, the Spencers argued that the court's initial post-remand ruling had actually "exceed[ed]" the mandate from the supreme court in *SRB I.* In the Spencers' view, this was so because the district court's initial ruling had given them "the ability to move the easement," but "that ability to move the easement was not challenged" by SRB in the appeal. The Spencers thus argued that their "ability to relocate the easement should not now be limited by a new, more restrictive, order." SRB opposed this motion, after which the court heard additional arguments from the parties.

¶22 In January 2022, the district court issued a revised decision that granted some, but not all, of the changes requested by the Spencers. The court amended the post-remand decision as follows:

- Finding of Fact 18: "Use of the easement was limited to the travelled surface of the historical roadway, which was a maximum of fourteen feet."

- Conclusion of Law 9: The Spencers "may make reasonable, minor changes to the location of the

easement in the future, but may not diminish the width of the travelled way to less than fourteen feet. [The Spencers] also may not diminish the ease of use."

The court did not change Conclusion of Law 13.

## ISSUES AND STANDARDS OF REVIEW

¶23 The Spencers now challenge the district court's ruling on two grounds. First, they argue that the district court violated the law of the case doctrine when, after the remand from the Utah Supreme Court, the district court altered a portion of the judgment that "had not been appealed and remain[ed] undisturbed on appeal." Appellate courts review the "application of the law of the case doctrine . . . under an abuse of discretion standard." *McLaughlin v. Schenk*, 2013 UT 20, ¶ 19, 299 P.3d 1139 (quotation simplified).

¶24 The Spencers next argue that the district court erred by imposing certain limitations on their ability to move the location of the road. In reviewing a district court's determinations relating to "whether a prescriptive easement exists," we review the court's "conclusions regarding the legal standard for correctness," and we "review the court's factual findings, including how the court applied those findings to the correct legal standard, for an abuse of discretion." *SRB I*, 2020 UT 23, ¶ 6, 463 P.3d 654.

## ANALYSIS

¶25 The district court ruled that SRB has a prescriptive easement across the Spencers' property and that the Spencers can make "reasonable, minor" changes to its location. The Spencers now challenge that limitation.

¶26    We first note two things that are not at issue in this appeal. First, the Spencers have not challenged the district court's threshold determination that SRB has a prescriptive easement to cross their property. And second, SRB has not challenged the court's determination that the Spencers have at least some ability to move the location of the road through which SRB exercises its rights.

¶27    The two issues raised by the Spencers in their appeal are instead narrower. Namely, the Spencers first argue that the district court violated the law of the case doctrine on remand when it imposed certain limitations on their ability to move the location of the road. And they next argue that, law of the case implications aside, the court abused its discretion when it limited them to "minor" adjustments to the road's location. We disagree with the Spencers on both fronts.

## I. Law of the Case

¶28    The Spencers argue that under the law of the case doctrine, the district court could not impose any limitations on the location of the road beyond those that were already set forth in the initial decision that the court had issued before SRB's appeal to the supreme court. In response, SRB argues that the law of the case doctrine was inapplicable, and, in any event, that the doctrine didn't prevent the district court from imposing the limitations that it did. We agree with the Spencers that the law of the case doctrine was applicable to the court's post-remand ruling, but we disagree with the Spencers' contention that the doctrine was violated here.[7]

---

7. SRB also argues that the law of the case issue is unpreserved because the Spencers didn't mention the law of the case doctrine below or cite authority about it. "In order to preserve an issue for appeal," however, "the issue must be presented to the district

(continued…)

¶29 Under the law of the case doctrine, "a decision made on an issue during one stage of a case is binding in successive stages of the same litigation." *IHC Health Services v. D&K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 (quotation simplified). And where a "final ruling or order of the trial court[] goes unchallenged by appeal, such becomes the law of the case, and is not thereafter subject to later challenge." *Tracy v. University of Utah Hosp.*, 619 P.2d 340, 342 (Utah 1980); *see also State v. Rodriguez*, 841 P.2d 1228, 1229 (Utah Ct. App. 1992) (holding that a trial court's ruling remained law of the case "[s]ince the defendant ha[d] failed to appeal" that ruling). In this sense, "a district court's power to reconsider decided issues is limited when the case has been appealed and remanded." *Wasatch County v. Okelberry*, 2015 UT App 192, ¶ 30, 357 P.3d 586 (quotation simplified); *see also*

---

court in such a way that the district court has an opportunity to rule on that issue." *State v. Moa*, 2012 UT 28, ¶ 23, 282 P.3d 985 (quotation simplified). While appellate courts "view *issues* narrowly," "new *arguments*, when brought under a properly preserved issue or theory, do not require an exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 14 n.2, 416 P.3d 443 (emphases in original); *see also Gressman v. State*, 2013 UT 63, ¶ 45, 323 P.3d 998 ("*Issues* must be preserved, not arguments for or against a particular ruling on an issue raised below." (emphasis in original)).

In their rule 59 motion after the remand, the Spencers argued that the post-remand ruling was erroneous because the district court addressed matters that hadn't been challenged in *SRB I*. The Spencers further argued that their "ability to change the roadway location" therefore "should not be restricted beyond the limits imposed by the original Court Order." Although the Spencers didn't use the phrase "law of the case," this was essentially the same argument that they are making now, both in terms of its core legal rationale and its ultimate request. This was sufficient to bring the issue to the district court's attention, thereby preserving it for appeal.

*Woodward v. LaFranca*, 2016 UT App 141, ¶ 8, 381 P.3d 1125 (noting that a "remand with specific instructions to the trial court necessarily precludes the trial court from considering issues outside the scope of remand").

¶30 The Spencers' argument turns on "a subset of the law of the case doctrine" that is referred to as the "mandate rule." *State v. Oliver*, 2018 UT App 101, ¶ 29 n.8, 427 P.3d 495. This rule recognizes that a decision of an appellate court "binds both the district court and the parties to honor the mandate of the appellate court" if there is a remand. *Id.* (quotation simplified). In this sense, "the decisions of an appellate court become the law of the case and cannot be reconsidered on remand." *Id.* (quotation simplified).

¶31 Here, there was an initial ruling from the district court, an appeal to the supreme court by SRB, and then a remand by the supreme court for further proceedings. Given this trajectory, we agree with the Spencers that the law of the case doctrine (including the mandate rule) was applicable to the district court in the post-remand proceedings.

¶32 But even so, we disagree with the Spencers' contention that the district court violated the law of the case doctrine here. It's true, as the Spencers point out, that although SRB's appeal of the district court's 2018 ruling was certainly broad enough to include any issues related to the "scope of" the easement, SRB didn't include any argument in their appellate briefs challenging the court's specific ruling about the Spencers' ability to move the location of the road. And it's also true that when a "final ruling or order of the trial court[] goes unchallenged by appeal, such becomes the law of the case, and is not thereafter subject to later challenge." *Tracy*, 619 P.2d at 342.

¶33 But as explained above, SRB did appeal the district court's limitations on its ability to use the road, and the supreme court regarded those limitations as being part of the easement's scope.

Because it was reversing one part of the ruling about the easement's scope, the supreme court remanded for the district court to again "determine[e] the scope of the prescriptive easement." *SRB I*, 2020 UT 23, ¶ 1, 463 P.3d 654. Providing guidance to the district court about what a scope determination should look like, the supreme court explained that the scope of an easement is defined by "the nature and extent of the easement's historical use." *Id.* ¶ 14. And the supreme court then laid out a host of factors relevant to this determination, stating that "courts should consider any and all" of them when "determining the extent of the historical burden on the servient estate." *Id.* ¶ 38. These factors include "the nature of the burden on the servient estate" and "the physical dimensions of the prescriptive use." *Id.*

¶34 Again, under the law of the case doctrine, a "remand with specific instructions to the trial court necessarily precludes the trial court from considering issues outside the scope of remand." *Woodward*, 2016 UT App 141, ¶ 8. But because the supreme court here had expressly remanded to the district court for a new scope determination, and because that determination would turn, in part, on an assessment of the "nature and extent" of the road's "historical use" and the "nature of the burden" imposed by that easement on the Spencers, this new determination would naturally include decisions about where the road was located, whether the Spencers could move the road, and, if they could move it, whether there were any limitations on that right.

¶35 If there was any doubt about the district court's ability to consider these issues on remand, the supreme court removed that doubt in Part III(D) of its opinion. In Part III generally, the court laid out the various factors that go into a decision about an easement's scope. *See SRB I*, 2020 UT 23, ¶¶ 19–38. In Part III(D), the court more particularly held (as indicated in that subsection's subheading) that "the nature of a use can be altered reasonably." *Id.* ¶¶ 31-32 (quotation simplified). In that subsection, the supreme court explained that "in considering changes to the use

of an easement or the servient estate, [Utah courts] apply a flexible rule that seeks to accommodate reasonable changes in use." *Id.* ¶ 33. Echoing this same point at the close of the opinion, the supreme court directed the district court on remand to "employ a flexible approach that aims to find some accommodation of the parties' conflicting interests . . . so that the prescriptive right retains its utility for SRB without materially adding to the burden imposed on the Spencers." *Id.* ¶ 48 (quotation simplified).

¶36    The Spencers did not file a petition for rehearing asking the supreme court to strike those paragraphs. Because of this, those paragraphs were part of the mandate given to the district court. Because the district court was being directed by the supreme court to employ a "flexible" approach that would consider "reasonable changes in use" to the roadway in an effort to accommodate the "parties' conflicting interests," this determination would naturally include consideration of the Spencers' ability to move the road.

¶37    For these reasons, we conclude that the district court acted within the scope of the supreme court's mandate when it considered the location of the road and whether any change could be made to it. Under the circumstances of this case, the law of the case doctrine was not violated.

## II. The "Reasonable, Minor Changes" Limitation

¶38    In their rule 59 challenge to the post-remand ruling, the Spencers claimed they had an "absolute right to relocate the easement." In its final ruling, however, the district court determined that the Spencers could make "reasonable, minor changes to the location of the easement in the future." The Spencers now argue that by imposing this limitation, the district court "abused and exceeded its discretion . . . by imposing an

effectively permanent geographic scope where no such permanence previously existed."[8]

¶39 The ruling in question first limits the Spencers to "reasonable" changes to the road's location. The initial ruling contained a similar limitation, and the Spencers did not appeal or cross-appeal that limitation. Though they have at times seemed to concede that this limitation was proper, they have at other times argued that they have an "absolute right" to move the road—an argument that would seem to challenge the reasonableness limitation too. Regardless, at oral argument in this appeal, the Spencers conceded that the reasonableness component of the post-remand limitation was proper.

¶40 The Spencers' challenge is thus confined to the additional inclusion of the word "minor" in this limitation. But again, the supreme court in *SRB I* directed the district court to make a new determination of the easement's scope. And it explained that this determination should be based, in part, on "the nature and extent

---

8. In passing, the Spencers also suggest that the court "did not apply the correct legal standard" that was set forth by the supreme court in *SRB I*. But the court did. It introduced its post-remand order by noting that the Utah Supreme Court had instructed it "to take a flexible approach to determining the scope of the easement that permits changes in use of both the dominant and servient estates so long as those changes do not materially increase the burden imposed on either party." The court then introduced its findings of fact under headings that were lifted from *SRB I*. For example, the district court quoted the supreme court's statement that a "prescriptive easement's scope should be defined with particularity based on the nature, or extent, of . . . historical use," and it then proceeded to apply that statement to the facts at issue in this case. Because of this, the real focus of the Spencers' challenge is to the court's application of that standard to this case which, again, is reviewed for an abuse of discretion.

of the easement's historical use." *SRB I*, 2020 UT 23, ¶ 14. In its post-remand ruling, the district court found that "the course of the road easement was occasionally adjusted." With respect to the nature of these adjustments, Carroll testified that for "a long time, there was only one" road and that when the location of the road changed, it was only "changed a little bit." The Spencers haven't pointed to any testimony or evidence that contradicted this testimony. Thus, while it's undisputed that the road has been historically moved, there's nothing in the record showing that the Spencers ever had a historical practice of moving the easement in what could be described as a *major* way. The limitation at issue therefore appears consistent with the parties' historical use, not inconsistent with it.

¶41    In any event, *SRB I* also directed the district court to "find some accommodation" of the parties' "conflicting interests" "so that the prescriptive right retains its utility for SRB without materially adding to the burden imposed on the Spencers." *Id*. ¶ 48 (quotation simplified). Given that the Spencers are now conceding that the court could impose a "reasonableness" limitation on them, the Spencers have not persuaded us that the addition of the word "minor" materially adds to the burden that is being imposed on them. To the extent that there is any daylight between what would be "reasonable" and what would be "minor," this would seem to be minimal. And regardless, SRB has its own interests in play too, and the supreme court directed the district court to take those into account. This limitation seems consistent with that directive, particularly given the possibility that a major adjustment to the location of the road could create additional and unwarranted burdens on SRB's ability to access its property.

¶42    As noted, we review the district court's application of its "findings" to the "legal standard" regarding an easement's scope for an abuse of discretion. *Id*. ¶ 6. The abuse of discretion standard is a deferential one, and that deference is warranted here where

we're reviewing a lower court's attempt to accommodate and balance the parties' respective interests. In these circumstances, we see no abuse of discretion in the court's addition of the word "minor" to this limitation as part of its effort to do so.

CONCLUSION

¶43　In *SRB I*, the supreme court remanded with directions for the district court to determine the scope of SRB's easement. In making that determination, the district court did not abuse its discretion when it limited the Spencers to "reasonable" and "minor" changes to the road's location.

¶44　Affirmed.

———————